## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**STARSTONE NATIONAL
INSURANCE COMPANY,**

        **Plaintiff,**

                                **CASE NO.:  6:18-cv-1048-ORL-11-TBS**

**vs.**

**POLYNESIAN INN, LLC d/b/a DAYS
INN OF KISSIMMEE; ANDREW
JAMES BICKFORD; and JANE DOE,
as Personal Represntative of the Estate
of ZACKERY RYAN GANOE,**

        **Defendant.** _____    /

### DEFENDANT POLYNESIAN INN, LLC d/b/a/ DAYS INN
### OF KISSIMMEE'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Defendant, Polynesian Inn, LLC d/b/a Days Inn of Kissimmee ("Polynesian"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and moves for summary judgment against Plaintiff, StarStone National Insurance Company ("StarStone") and as grounds therefore states:

**I.**       **Concise Statement Of Material Facts As To Which No Genuine Issue Exist For Trial**

Defendant, Polynesian is a Florida limited liability company.  Affidavit of Wasim Ahmar, M.D. at ¶3.[1]  Dr. Ahmar is the managing member of Polynesian.  Ahmar Aff. at ¶3.  Polynesian purchased a hotel in Kissimmee, Florida operating as a Days Inn in approximately May 2007.  Ahmar Aff. at ¶4.  The address of the hotel is 2930 Polynesian Isle Boulevard, Kissimmee, FL 34746.  Ahmar Aff. at ¶4.  Polynesian continues to operate that hotel.  Ahmar Aff. at ¶4.

---

[1] Hereinafter referred to as "Ahmar Aff."  The Ahmar Aff. is attached hereto as Exhibit "A."

Polynesian purchased a Commercial General Liability ("CGL") policy to protect it from certain liabilities it may incur as a result of its ownership of the hotel.  Ahmar Aff. at ¶5.  The CGL policy applicable to the instant action was issued by Northfield Insurance Company ("Northfield") with a policy period from March 23, 2017 to March 23, 2018, Policy No. WS215327 ("Northfield Policy").  Ahmar Aff. at ¶5 (Exhibit 1 -redacted to protect personal/confidential information) and Plaintiff's Complaint (Doc. 1) at ¶21 (attaching the Northfield Policy to the Complaint as Exhibit "A")[2], Polynesian's Counterclaim (Doc. 10) at ¶¶52 and 53 (alleging that Polynesian was covered by the Northfield Policy and that Plaintiff was in possession of the Policies and/or same were attached to Plaintiff's Complaint) and Plaintiff's Answer and Affirmative Defenses to Polynesian's Counterclaim (Doc. 22) at ¶¶52 and 53 (admitting that Polynesian was covered by the Northfield Policy and that the Policy was in possession of Plaintiff and/or attached to its Complaint).  For ease of reference a copy of the Northfield Policy (redacted to protect personal/confidential information) is attached hereto as Exhibit "C."[3]

Polynesian also purchased an additional form of insurance coverage, an Excess Liability Insurance policy, Policy No. 77238T160ALI ("StarStone Policy").  Ahmar Aff. at ¶6.  The StarStone Policy applicable to the instant action was effective from June 3, 2016 to June 3, 2017.  Ahmar Aff. at ¶6 (Exhibit 2 - redacted to protect personal/confidential information), and Plaintiff's Complaint (Doc. 1) at ¶28 (attaching the StarStone Policy to the Complaint as Exhibit "B" and

---

[2]  See also ¶2 of Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions, attached hereto as Exhibit "B," wherein Plaintiff admits the Northfield Policy is attached to Plaintiff's Complaint.

[3]  The 90 pages of the attached Northfield Policy have been stamped NFP-001 through 090.  Hereinafter, references to the pages within this Policy will be made to those page numbers.  It should be noted that the copy of the Northfield Policy attached to Plaintiff's Complaint is 85 pages (see footnote 2).  The copy attached to the Ahmar Aff. (and here) is 90 pages.  The additional pages are NFP-002, 004 and 008, all of which are completely blank or are identified as being intentionally blank.  The other two pages are NFP-001 (a cover page) and NFP-007 (a notice page).  None of the additional pages affect the coverage questions at issue in this litigation.

identifying the policy period)[4], Polynesian's Counterclaim (Doc. 10) at ¶¶52 and 53 (alleging that Polynesian was covered by the StarStone Policy and that Plaintiff was in possession of the Policies and/or same were attached to Plaintiff's Complaint) and Plaintiff's Answer and Affirmative Defenses to Polynesian's Counterclaim (Doc. 22) at ¶¶52 and 53 (admitting that Polynesian was covered by the StarStone Policy and that the Policy was in possession of Plaintiff and/or attached to its Complaint).   For ease of reference, a copy of the StarStone Policy (redacted to protect personal/confidential information) is attached hereto as Exhibit "D."[5]

The StarStone Policy was originally issued by Torus National Insurance Company.   SSP-001.   Thereafter, the name of the insurance company was changed to Plaintiff.   SSP-001.

The StarStone Policy is a "Following Form" policy.   SSP-001.   The "Policy applies only to damages covered by the **Followed Policy** as shown in **Item 7. [Northfield Policy]** of the Declarations."   SSP-005.   Coverage under the StarStone Policy "follows the definitions, terms, conditions, limitations and exclusions of the **Followed Policy. . . ."**   *Id.*   Likewise, the StarStone Policy only pays "sums in excess of the Total Limits of Underlying Policies. . . ."   SSP-006.

On April 10, 2017, Defendant, Andrew Bickford ("Bickford'), checked in to Polynesian's Days Inn as a registered guest.   Ahmar Aff. at ¶7 and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶5.   He rented a room for one night. Ahmar Aff. at ¶7.   The registration card indicated that the room contained two guests.   Ahmar Aff. at ¶7.   Zackery Ryan Ganoe ("Ganoe") at some point was in Bickford's room at the Days Inn. Ahmar Aff. at ¶8 and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶6.   In or around Bickford's room at the Days Inn, on April 11,

---

[4]   See also ¶¶3 and 4 of Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) wherein Plaintiff admits the StarStone Policy is attached to Plaintiff's Complaint.

2017, Emerita Mapp ("Mapp") murdered Ganoe and attempted to murder Bickford (hereinafter this event is referred to as the "Event").  Videotaped Deposition of Andrew James Bickford at 61-62[6], Ahmar Aff. at ¶9 and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶¶7, 8 and 9.

Bickford made a claim for damages against Polynesian alleging that it failed to provide adequate security.  Ahmar Aff. at ¶10 and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶10.  The claim for damages was submitted by Polynesian and/or Bickford to Northfield and StarStone pursuant to the terms of the Northfield Policy and the StarStone Policy.  Ahmar Aff. at ¶10 and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶11.  Northfield agreed that its Policy provided coverage.  Ahmar Aff. at ¶11.  StarStone denied coverage and refused to provide either a defense or indemnity as a result of the Event.  Ahmar Aff. at ¶11 and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶12.  StarStone's denial of coverage is set forth in a letter dated June 29, 2018.  Ahmar Aff. at ¶12 (Exhibit 3 - redacted to protect personal/confidential information)  and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶13.  Ganoe's estate has not made a claim against Polynesian but its interest is the same as Bickford's in this litigation.[7]  Ahmar Aff. at ¶13.

The Northfield Policy provides, among other coverages, coverage for bodily injury.  NFP-021.  Specifically, "Coverage A Bodily Injury and Property Damage Liability" provides coverage as follows:  "[w]e will pay those sums that the insured becomes legally obligated to pay as damages

---

[5]  The 31 pages of the attached StarStone Policy have been stamped SSP-001 through 031.  Hereinafter, references to the pages within this Policy will be made to those page numbers.
[6] Selected Portions of the Videotaped Deposition of Andrew James Bickford taken May 24, 2019 are attached hereto as Exhibit "E."  He testified that Mapp stabbed him in the throat (page 61) and that Ganoe was killed (page 62).

because of "bodily injury" or "property damage" to which this insurance applies. *Id.* "Bodily injury" is defined by the Northfield Policy as follows: "Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." NFP-032.

However, the Northfield Policy also includes an endorsement entitled "Limited Assault or Battery Liability Coverage". NFP-069 – 072. Under that endorsement, the coverage for assault or battery that would normally be provided under Coverage A (bodily injury liability), is excluded. NFP-069. In particular, the Limited Assault or Battery Liability Coverage endorsement at NFP-069 adds an exclusion to the exclusions listed for Coverage A providing that there is no insurance under Coverage A for: "**Assault Or Battery** 'Bodily injury' or 'property damage' arising out of any act of 'assault' or 'battery' committed by any person, including any act or omission in connection with the prevention or suppression of such 'assault' or 'battery.'" The Limited Assault or Battery Liability Coverage endorsement defines battery as "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." NFP-072.

Secondly, the Limited Assault or Battery Liability Coverage endorsement adds a new type of coverage, to wit: Coverage - Assault or Battery Liability. NFP-069. That coverage pays sums that Polynesian becomes legally obligated to pay as a result of bodily injury caused by an assault or battery. *Id.*

Thirdly, the Limited Assault or Battery Liability Coverage endorsement includes a limit for the new assault or battery coverage. NFP-071. In particular, at NFP-071 of the endorsement, it provides as follows:

> 7.    The following is added to **SECTION III – LIMITS OF INSURANCE:**

---

[7] This Court entered a default against Ganoe's estate on April 11, 2019 (Doc. 62).

**Assault Or Battery Liability Limits**
Subject to the General Aggregate Limit, the Assault Or Battery Aggregate Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay for the sum of all damages under Coverage – **Assault Or Battery Liability**.

Subject to the Assault Or Battery Aggregate Limit, the Each Assault Or Battery Offense Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay under Coverage – **Assault Or Battery Liability** for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "assault or battery offense".

The Schedule of Assault or Battery Limits provides that there is a $25,000 limit for each assault or battery offense and an aggregate assault or battery limit of $50,000.  NFP-069.

The Northfield Policy is the "followed" policy under the StarStone Policy.  SSP-031.[8]  The StarStone Policy, Section I. – Coverage provides in pertinent part:

    **A.**  We will pay on behalf of the Insured the sums in excess of the Total Limits of Underlying Policies shown in **Item 6**. of the Declarations that the Insured becomes legally obligated to pay as damages.

    **B.**  This Policy applies only to damages covered by the **Followed Policy** as shown in **Item 7.** of the Declarations.  Except as otherwise provided by this Policy, the coverage follows the definitions, terms, conditions, limitations and exclusions of the **Followed Policy** in effect at the inception of this Policy.

SSP-005.  However, the StarStone Policy also provides that:

    **D.**  Notwithstanding **A.**, **B.** and **C**. above, in no event will this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy:**

    . . . .

---

[8] The original "followed" policy under the StarStone Policy was a policy from Maxum Indemnity Company.  SSP-016.  The StarStone Policy (at SSP-031) includes an endorsement replacing the Maxum Indemnity Company policy with the Northfield Policy as the followed policy.

> 3. Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

*Id.* StarStone's denial of coverage is based solely on this provision. Ahmar Aff. at ¶12 and Plaintiff's Response to Defendant Polynesian Inn's First Request for Admissions (Exhibit "B" hereto) at ¶13[9]. In particular, it is StarStone's position that the limit for assault or battery coverage is a "sublimit of liability" and that this alleged "sublimit" is not specifically endorsed to StarStone's policy, and, therefore, no coverage should not be provided for the Event.

## II.   Argument

### A.   Applicable Standard And Case Law Relating To Interpretation Of Contracts

Fed. R. Civ. P. 56(a) provides that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Disputes over facts are "material" if such issues might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, an issue about a material fact is "genuine" if a reasonable jury could return a verdict for the nonmoving party based on such evidence. *Id.* Summary judgment is not appropriate "[i]f a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact" *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1315 (11th Cir. 2007). "If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." *Allen,* 495 F.3d at 1314.

---

[9]  Plaintiff's denial of coverage letter is attached to the Ahmar Aff. as Exhibit 3. That letter, at 3, acknowledges that the Northfield Policy is the followed policy but then goes on to state that: "unless a particular sublimit is specifically endorsed to your StarStone policy, your StarStone policy does not provide **any** coverage for a claim that is subject to that sublimit. When the Northfield Policy was endorsed to the StarStone Policy, the endorsement did not specifically endorse the assault and battery sublimit. **As a result, Polynesian's StarStone policy does not provide coverage for this loss, and you should take immediate steps to protect yourself."** (emphasis in original).

This Court has jurisdiction of this matter based on diversity of citizenship, 28 U.S.C. §1332.  In such cases, Florida law applies *State Farm Fire and Cas. Co. v. Steinberg, et al.,* 393 F.3d 1226, 1230 (11th Cir.2004).   In Florida, "insurance contracts must be construed in accordance with the plain language of the policy."   *Swire Pacific Holdings, Inc. v. Zurich Insurance Company,* 845 So.2d 161, 165 (Fla. 2003).   Moreover, an insurance policy must be read as a whole, "endeavoring to give every provision its full meaning and operative effect. *Swire,* 845 So.2d at 166 (quoting *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000)).   Additionally, if "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is ambiguous." *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000).   If the language of an insurance policy is subject to "differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So.2d 1072, 1076 (Fla. 1998).   Finally, "[p]olicy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are construed even more strictly against the insurer than coverage clauses."  *Flores v. Allstate Ins. Co.,* 819 So.2d 740, 744 (Fla. 2002).

### B.    StarStone's Position

As indicated above, the StarStone Policy provides that:

> D.  Notwithstanding **A**., **B**. and **C**. above, in no event will this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy:**
>
> . . . .
>
> 3.  Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

SSP-005.  StarStone's denial of coverage is based solely on its position that the Limited Assault or Battery Liability Coverage is in fact a "sublimit of liability."  In particular, at ¶27 (page 5) of StarStone's Complaint (Doc. 1), StarStone makes the conclusory allegation that the coverage provided by the Limited Assault or Battery Liability Coverage endorsement is "subject to a <u>sublimit</u> of $25,000 per assault and battery offense, subject to a $50,000 aggregate."  (emphasis added).  At ¶22 (page 4) of StarStone's Complaint it states that the "Northfield Policy contains limits of liability of $1 million per occurrence, subject to a $2 million aggregate."[10]  Accordingly, the issue in this case is quite simple and direct -- is the Limited Assault or Battery Liability Coverage a sublimit of the Northfield Policy's $1,000,000 Each Occurrence Limit.  NFP-019.

### C.     What Is A Sublimit?

Under Florida law, Court's may consult references, like dictionaries, that are relied upon to supply the accepted meaning of words.  *Garcia v. Fed. Ins. Co.,* 969 So.2d 288, 291-292 (Fla. 2007).  Here, obviously, the term "sublimit" is merely the word "limit" modified by the prefix "sub."  The definition of the prefix "sub" is defined in part as "meaning "under," "below," "beneath" . . . "secondary," "subordinate". . . ."  Sub-. 2019.  In *Dictionary.com*.  Retrieved April 26, 2019, from https://www.dictionary.com/browse/sub-.  Likewise, the prefix "sub" is defined online by Merriam-Webster using the following four categorical definitions: 1) under/beneath; 2) subordinate/secondary; 3) less than completely/perfectly; and 4) almost/nearly.  In *Merriam-webster.com*.  Retrieved June 26, 2019, from https://www.merriamwebster.com/dictionary//sub.

---

[10]  StarStone's Complaint does not specifically state which limit in the Northfield Policy it contends the Limited Assault or Battery Liability Coverage is under as a sublimit.  However, the only allegation in the StarStone Complaint relating to other limits in the Northfield Policy is at ¶22.  Therefore, there is no genuine issue of material fact that StarStone contends that the Limited Assault or Battery Liability Coverage is a sublimit of the $1,000,000 Each Occurrence Limit in the Northfield Policy.  See NFP-019..

Sublimit is not defined in either the Northfield Policy or the StarStone Policy. However, both policies do use the prefix "sub" in other contexts. For example, at page NFP-022, the Northfield Policy refers to the applicability of a "<u>sub</u>paragraph" within the Northfield Policy. When referring to "subparagraph" on this page, the reference is to a <u>subpart</u> of the main paragraph (setting forth certain Exclusions; specifically referring to "subparagragh" f noting that "this subparagraph does not apply to" (creating an exception to the pollution exclusion)). Likewise, the Northfield Policy (at NFP-023) uses both the terms "contractor" and "<u>sub</u>contractor." Obviously, the term subcontractor means a contractor who is working <u>under</u> a general contractor. Additionally, the Northfield Policy references "lessees" and "<u>sub</u>lessees (Northfield Policy at NFP-055). Again, the reference to sublessees means a lease which is <u>under</u> or <u>subordinate</u> to the primary lease. Accordingly, the primary question to be asked when determining whether a particular limit is a "sublimit," is <u>to what limit is the alleged "sublimit" subordinate</u>? If it is not subordinate to (or under) another limit, it is its own standalone limit and not a sublimit.

It is worth noting here that a sublimit is not simply a "lesser" or "smaller" limit[11]. Insurance policies in general, and the Northfield Policy in particular, as detailed more fully below, include different limits for different risks. If those limits are in fact subordinate to another limit then they may be properly be characterized as a "sublimit." However, if such limits are not subordinate to another limit then they are not (and cannot be) "sub" anything. Instead, such limits are simply the "limit" for a particular risk. That is the case here.

---

[11]  Interestingly, the online version of Merriam-Webster's dictionary includes a main definition of the prefix "sub" (cited above) but also a section entitled "More Definitions for *Sub*." In *Merriam-webster.com*. Retrieved June 26, 2019, from https://www.merriamwebster.com/dictionary//sub. Under that section it lists an additional definition for the "sub" prefix as a "division or smaller part of." *Id.* However, this definition is listed for "English Language Leaners" and/or "Kids." *Id.* Nonetheless, even using the "sub" prefix in such a way, it still must be a "division" or "smaller part" of <u>another limit</u>. That is not the case here.

### D.        Northfield Policy – Coverages Provided And Applicable Limits

The Northfield Policy -- before any endorsements -- contained three separate coverages. In particular, beginning at NFP-021 under Section I – Coverages the Northfield Policy provided the following coverages:

- Coverage A Bodily Injury and Property Damage Liability[12] (NFP-021)

- Coverage B Personal and Advertising Injury Liability (NFP-025)

- Coverage C Medical Payments (NFP-027)

Moreover, by way of endorsement, two additional coverages were added.

- Hired Auto Liability – Non-Owned Auto Liability Coverage (NFP-054)

- Limited Assault or Battery Liability Coverage (NFP-069)

The Northfield Policy also includes a separate section entitled Section III – Limits of Insurance (NFP-029-030) which establishes the insurance limits and associated rules for the various coverages.  The Limits of Insurance provision is modified via several endorsements to the Northfield Policy.  For the convenience of the Court, the Limits of Insurance section has been reproduced below.  It includes the original language Limits of Insurance section along with the language added (or subtracted) by endorsement.   Different colored highlighting is used to identify from which endorsement the changes to the original language are derived.

---

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage C;
   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c. Damages under Coverage B.
   Damages under Coverage - Assault Or Battery Liability.
   Assault Or Battery Liability Limits

---

[12]  This includes "Products-Completed Operations Hazard (NFP-034).  Classically, Products-Completed Operations hazard pays for liability resulting from bodily injury or property damage from a defective product ("Product Hazard") or faulty construction ("Completed Operations hazard").

Subject to the General Aggregate Limit, the Assault Or Battery Aggregate Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay for the sum of all damages under Coverage - Assault Or Battery Liability.

Subject to the Assault Or Battery Aggregate Limit, the Each Assault Or Battery Offense Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay under Coverage - Assault Or Battery Liability for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "assault or battery offense".

When Two Or More Coverage Limits Apply To The Same Physical Act Or Related Physical Acts

When two or more of Coverage A, Coverage B, Coverage - Abuse Or Molestation Liability or Coverage - Assault Or Battery Liability, if any such coverages are part of your policy, apply to damages because of "bodily injury" or "personal and advertising injury" arising out of the same physical act or related physical acts, then the most we will pay for the sum of all such damages subject to the limits of insurance is the single highest available limit of insurance that applies under any one of those Coverages.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by anyone person or organization.

Noncumulation of Personal and Advertising Injury Limit - If any one person or organization sustains:

  a. "Personal and advertising injury" to which this insurance applies; and

  b. "Personal and advertising injury" to which commercial general liability coverage included in one or more prior or future policies issued to you by us, or any of our affiliated insurance companies, applies;

this policy's Personal and Advertising Injury Limit applicable to that person or organization also will be reduced by the amount of each payment made because of the "personal and advertising injury" described in Paragraph b. above by us or any of our affiliated insurance companies under, and within the applicable limit of insurance of, each other such policy.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all:

  a. Damages under Coverage A because of all "bodily injury" and "property damage"; and

  b. Medical expenses under Coverage C because of all "bodily injury";

arising out of any one "occurrence".

Noncumulation of Each Occurrence Limit - If any one "occurrence" causes:

  a. "Bodily injury" or "properly damage" to which this insurance applies; and

  b. "Bodily injury" or "property damage" to which commercial general liability coverage included in one or more prior or future policies issued to you by us, or any of our affiliated insurance companies, applies;

this policy's Each Occurrence Limit applicable to that "occurrence" also will be reduced by the amount of each payment made because of the "bodily injury" or "property damage" described in Paragraph b. above by us or any of our affiliated insurance companies under, and within the applicable limit of insurance of, each such other policy.

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

Subject to the Each Occurrence Limit in Paragraph 5.,above, the Hired And Non-Owned Auto Liability Limit shown in the Schedule - Hired And Non-Owned Auto Liability Limit Of Insurance is the most we will pay under Hired Auto Liability and Non-Owned Auto Liability Coverage because of all "bodily injury" and" property damage" arising out of any one" occurrence".

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

---

- Original at Pages NFP-029-030
- Combination Endorsement Bodily Injury and Property Damage Liability at NFP-047.
- Hired Auto Liability – Non-Owned Auto Liability Coverage at NFP-055.
- Combination Endorsement – Personal and Advertising Injury Liability NFP-066.
- Limited Assault and Battery Liability Coverage at NFP-071

As detailed in this Section, at paragraph 1 the "Limits of Insurance shown in the Declarations and the rules below fix the most we will pay. . . ." NFP-029.  The Declarations, with a table of limits (prior to the changes in the endorsements), is at NFP-019.  These "rules" establish under what circumstances one limit may be subject to another limit thereby creating a "sublimit" relationship.

Paragraph 2 of this Section deals exclusively with the General Aggregate Limit.  The Declarations (NFP-019) provide that the General Aggregate Limit is $2,000,000.  The General Aggregate Limit is not a coverage limit but instead, as its name implies, is the most that the Policy will pay for each yearly policy period.  See *Koikos v. Travelers Ins. Co.*, 849 So.2d 263 (Fla. 2003)("There is also a "General Aggregate Limit" of $1,000,000 that is the limit of insurance for each annual twelve-month period." (footnote omitted)).[13]

Similarly, Paragraph 3 sets forth the Products-Completed Operations Aggregate Limit.  The Declarations (NFP-019) provide that the Products/Completed Operations Aggregate Limit is $2,000,000.  See footnotes 12 and 13 above.

Paragraph 4 sets forth the limit for Personal and Advertising Injury Liability (Coverage B).  The Declarations (NFP-019) provide that the Personal and Advertising Injury Limit is $1,000,000.

Paragraph 5 sets forth the combined limit for Bodily Injury and Property Damage Liability (Coverage A) and for Medical Payments (Coverage C).  This limit is identified in the Declarations (NFP-019) as the "Each Occurrence Limit."  The limit is $1,000,000.

---

[13]  See also Section III – Limits of Insurance (NFP-030) which provides that: "The Limits of Insurance. . . apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance."

Importantly, paragraphs 4 and 5 of Section III – Limits of Insurance are <u>only subject to the Northfield Policy's aggregate limits</u> (either the General Aggregate Limit or the Products-Completed Operations Aggregate Limit). See paragraph 4 ("Subject to Paragraph 2. above,") and paragraphs 5 ("Subject to Paragraph 2. or 3. above, whichever applies,"). Accordingly, there is no question but that the limits set forth in these paragraphs are not "sublimits of liability" as they are not subordinate to any other coverage limit[14].

Conversely, paragraphs 6 and 7 are subject to the $1,000,000 Each Occurrence Limit. Specifically, paragraph 6 sets forth a "sublimit of liability" under Coverage A for Damage to Premises Rented To You. The Declarations (NFP-019) provide that the Damage to Premises Rented To You Limit is $100,000. That paragraph specifically provides that it is "Subject to Paragraph 5. above," ($1,000,000 Each Occurrence Limit).

Likewise, paragraph 7 also sets forth a "sublimit of liability" under the $1,000,000 Each Occurrence Limit for Medical Expenses. The Declarations (NFP-019) provide that the Medical Expense Limit is $5,000 per person. Again, it is a sublimit because that paragraph specifically provides that it is "Subject to Paragraph 5. above," ($1,000,000 Each Occurrence Limit).

Turning now to the additional coverages added by endorsement – Hired Auto Liability – Non-Owned Auto Liability Coverage and Limited Assault or Battery Liability Coverage – the endorsements both state that the "following [language] is added to **SECTION III – LIMITS OF INSURANCE:**". See Hired Auto Liability – Non-Owned Auto Liability Coverage at NFP-055 and Limited Assault or Battery Liability Coverage at NFP-071[15]. One of these coverages is a

---

[14] Again, an aggregate limit is not a coverage limit; it is a policy period limit.

[15] The Limited Assault or Battery Liability Coverage endorsement (¶8) directs that a portion of the added language is to be included in paragraph 2 of Section III – Limit of Insurance. As noted in the modified Section III – Limit of Insurance above, that language was added at the end of that paragraph as directed (green highlighting). However, the Limited Assault or Battery Liability Coverage endorsement does not direct where the remaining portion of the changes are to be added (¶7). Those changes are added immediately following paragraph 2 of Section III – Limit of Insurance. See above - green highlighting. Likewise, the Hired Auto Liability – Non-Owned Auto Liability

sublimit and one is not.  In particular, the Hired Auto Liability – Non-Owned Auto Liability Coverage provides in Section III – Limits of Insurance that it is "[s]ubject to the Each Occurrence Limit in Paragraph 5.,".  That same provision also provides that the limit for this coverage is set forth in the "Schedule – Hired and Non-Owned Auto Liability Limit of Insurance."  That schedule, set forth at NFP-054, establishes the limit of this coverage at $1,000,000 -- the same as the Each Occurrence Limit.[16]

Finally, the pivotal issue in this case -- whether the Limited Assault or Battery Liability Coverage limit is a sublimit or liability or its own standalone limit.  Clearly, based on the language in the Northfield Policy, it is a standalone limit.  In particular, as amended, Section III – Limits of Insurance provides with respect to the Limited Assault or Battery Liability Coverage that it is **only** "[s]ubject to the General Aggregate Limit."  That means it is not subject to or subordinate to the $1,000,000 Each Occurrence Limit[17].  The provision goes on to state that Limited Assault or Battery Liability Coverage is limited as set forth in the Schedule of Assault or Battery limits.  That schedule, at NFP-069, provides that the aggregate limit for assault or battery is $50,000 and the limit for each assault or battery is $25,000.  Admittedly, the assault or battery

---

Coverage does not direct where in Section III – Limit of Insurance the additional language is to be added (¶E).  It was added after the other similar provisions that indicated that they were subject to the $1,000,000 Each Occurrence Limit.  See above – olive highlighting.

[16] The fact that the Hired Auto Liability – Non-Owned Auto Liability Coverage limit is the same as the Each Occurrence limit supports Polynesian's argument set forth above that whether a limit is a sublimit has nothing to do with the amount of the limit ("a sublimit is not simply a "lesser" or "smaller" limit").  Here, by the terms of the Northfield Policy the Hired Auto Liability – Non-Owned Auto Liability Coverage limit is clearly subordinate to the Each Occurrence limit although the limits are, in fact, the same.

[17] Conceivably, StarStone could argue that the Limited Assault or Battery Liability Coverage is a "sublimit" of the aggregate limit.  StarStone has not made this argument as it would be patently unreasonable in light of the terms the StarStone Policy.  Using that argument, benefits under the StarStone Policy would not be payable under any coverage until $2,000,000 had been paid under multiple coverages in the Northfield Policy.  For example, in one Policy period, there would have to be a bodily injury where $1,000,000 was paid (Each Occurrence limit) and also a advertising injury where another $1,000,000 was paid (Personal and Advertising Injury Limit) before any benefits became payable under StarStone Policy.  Again, this is not StarStone's contention.

limit is less than some of the other limits in the Policy.  However, it is not a sublimit of any other limit.

The Northfield Policy could have made the Limited Assault or Battery Liability Coverage a sublimit by making it subordinate to the $1,000,000 Each Occurrence Limit just like it did for Damage to Premises Rented To You, Medical Expenses and Hired Auto Liability – Non-Owned Auto Liability Coverage.  It did not.  Instead, it specifically designated Limited Assault or Battery Liability Coverage as being subject only to the General Aggregate Limit and not to the Each Occurrence Limit.  Therefore, it is not a sublimit.

> **E.    StarStone Is Liable For Excess Damages Following The $50,000 Aggregate/$25,000 Occurrence Assault Or Battery Limit In The Northfield Policy**

The StarStone Policy pays damages in excess of the limits of the Northfield Policy.  In addition to the narrative Limits of Insurance section included in the Northfield Policy, and modified by endorsement as detailed above, the Northfield Policy also includes a table identifying the Limits of Insurance.  Modifying that table, using the same endorsements (and color-coded highlights identified above) the table listing of the Limits of Insurance under the Northfield Policy is as follows:

---

LIMITS OF INSURANCE

---

| | |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
|    Damage To Premises Rented To You Limit | $    100,000 Any One Premises |
|    Medical Expense Limit | $      5,000 Any One Person |
|    Hired and Non-Owned Auto Liability Limit | $ 1,000,000 Any One Occurrence |
| Assault or Battery Aggregate Limit | $      50,000 |
| Each Assault or Battery Offense Limit | $      25,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 Any One Person or Organization |
| General Aggregate Limit | $ 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 |

- Original Declarations at Page 1 of 2
- Hired Auto Liability – Non-Owned Auto Liability Coverage at Page 1 of 3.
- Limited Assault and Battery Liability Coverage at Page 1 of 4.

It should be noted, without any additions or deletions, the table already visually identifies two of the limits as representing "sublimits" of the Each Occurrence Limit. These are identified by indenting the lines under the Each Occurrence Limit. These two sublimits, confirmed in the discussion above, are "Damage To Premises Rented To You" coverage ($100,000 limit) and "Medical Expense Limit" coverage ($5,000 limit). Modifying the table per the language of the endorsements shows that Hired and Non-Owned Auto Liability Limit coverage[18] is also a sublimit but that the limits for assault and battery are not sublimits. This modified schedule represents the limits of liability after which the StarStone Policy must provide coverage.

For example, if there is a loss that occurs under Coverage A and it exceeds $1,000,000 (Each Occurrence Limit), the StarStone Policy must provide coverage thereafter. If there is a Personal and Advertising Injury under Coverage B that exceeds $1,000,000, the StarStone Policy must provide coverage thereafter. Likewise, if there is an Assault or Battery that exceeds $25,000 for an occurrence or $50,000 in aggregate, the StarStone Policy must provide coverage thereafter. The StarStone Policy does not have to provide coverage for a Damage to Premises Rented to You injury or a Medical Expense because those are sublimits. The StarStone Policy at SSP-005 requires that sublimits of liability be specifically endorsed to the StarStone Policy.

After exhaustive research, the undersigned was unable to identify any cases that specifically address this issue. Classically, cases involving a CGL policy with an assault or battery endorsement often involve disputes over the availability of coverage under the CGL policy itself. See e.g., *Western Heritage Ins. C. v. Montana et al.,* 30 F.Supp.3d 1366 (M.D. Fla. 2014) and *AIX Specialty Inc. Co. v. Sombreros, LLC*, et al., No. 8:17-cv-843-T-26TBM, 2018 WL 1635643 (M.D. Fla. April 5, 2018). In many such cases, the assault or battery limit is

---

[18]  Although as detailed in footnote 16 above, while a sublimit, the limit is the same as the Each Occurrence Limit.

simply referred to as the "limit" for that coverage.  See e.g., *First Mercury Inc. Co. v. Sudderth,* 620 Fed.Appx. 826, 828 (11th Cir. 2015)("The insurance policy at the center of this action provides coverage to the Soho Grand [the insured - a nightclub] for 'bodily injury' claims up to a 'general aggregate limit' of $2 million.  But the policy also contains an 'Assault & Battery Coverage Endorsement.'   The assault and battery endorsement lowers the coverage limit to $100,000 for [an assault and/or battery]. . . ."  (citation omitted)) and *Burlington Ins. Co. v. De La Puente et al.,* 719 Fed.Appx. 615, 617 (9th Cir. 2018)("At issue is whether an insurance policy limits coverage to $25,000 for injuries sustained by the De La Puente Appellants [injured parties] on a nightclub's premises, because those injuries arose out of an assault and battery.")

However, some courts identify a -- less than the Each Occurrence Limit – limit for assault or battery colloquially as a "sublimit."  See e.g. *Century Surety Co. v. Seductions, LLC, et al.,* 349 Fed.Appx. 455, 458 (11th Cir. 2009)(We also conclude that CGL 1717's [assault or battery endorsement] $25,000 sublimit applies to Mauricio's injuries because they arose from an assault and battery.").  Such a reference is not dispositive of the issue in this case as the use of the term is dicta as there was no analysis in the opinion in *Century* as to whether the assault or battery endorsement was truly a "sublimit" per the terms of the specific insurance contract.  Here, the express terms of the Limited Assault or Battery Liability Coverage endorsement decidedly provides that such coverage is <u>not</u> a "sublimit" of any other coverage.

Although there are no cases directly on point, there is case law that is instructive in determining whether the assault or battery coverage limit in the Northfield Policy is a sublimit or its own standalone limit.  In particular, in *Lark v. Western Heritage Insurance Company*, 64 F.Supp.3d 802 (W.D. Vir. 2014), the Court addressed the availability of coverage under a CGL policy.  In that case, certain persons were assaulted outside a restaurant.  A claim for bodily

injury was made against the restaurant owners who were insured by a CGL policy.  The policy included a $1,000,000 per occurrence limit.  The policy also included an "add-on" assault and battery endorsement which changed the policy.  *Lark,* 64 F.Supp.3d at 805.  The assault and battery endorsement included limits of $100,000 per assault and battery event and $300,000 aggregate.

The primary issue in the case was whether the intentional assaults were covered as "occurrences" (defined as accidents, not intentional acts) under the general policy (meaning the policy without including the assault and battery endorsement).  The Court found that the intentional assaults were not covered under the general policy.  The Court then considered whether coverage arose under the assault and battery endorsement.  As to the endorsement, the Court found that it provided separate coverage for damages arising from an assault or battery and that such damages need not meet the definition of "occurrence" in the general policy.  In particular the Court stated as follows:

> Reading the assault and battery endorsement as providing <u>separate</u> coverage for assaults does not conflict with the general policy; instead, it "effectuates the intention of the parties" in executing this endorsement in the first place.  The general policy provides no coverage whatsoever for damages arising from intentional acts like those alleged in the underlying actions—both because those acts do not qualify as "occurrences" under the general policy, as discussed above, <u>and because the policy explicitly excludes coverage for damages arising from assault and battery.</u> (emphasis added)(citations omitted)

*Id.* at 811.  See also, generally, *M.J.R. Corp. v. Scottsdale Insurance,* 803 S.W.2d 426, 430 (Tex. App. – Dallas 1991)(based on the specific terms of the policies, the Court found that an endorsement provided separate coverage for assault; the Court noted that "[e]ach coverage provision of each policy, along with its respective definitions and exclusions, must be read as separate and distinct.  Although an attachment to an insurance policy upon a separate sheet of

paper and the policy are to be construed together, and as one, it by no means follows that they constitute an indivisible contract.  They are in fact two distinct contemporaneous contracts. Thus, the language of one of the contracts cannot be used to preclude the application of coverage under the other." (citations omitted)).

Here, as in *Lark*, there is no question but that the "general policy" (the StarStone Policy, not including the Limited Assault or Battery Liability Coverage endorsement) does not include coverage for assault or battery.  Such coverage was specifically excluded by the Limited Assault or Battery Liability Coverage endorsement.  Accordingly, the coverage for assault or battery is clearly available only as a <u>separate</u> coverage Limited Assault or Battery Liability Coverage endorsement.

While supportive of Polynesian's position, admittedly, the fact that the StarStone Policy clearly includes Limited Assault or Battery Liability Coverage as a separate coverage does not necessarily mean that the limit for such coverage is not a sublimit.  However, the fact that the coverage for assault or battery is separate, in conjunction with the specific terms of the StarStone Policy (detailed above) show that the Limited Assault or Battery Liability Coverage is <u>both</u> a separate coverage <u>and</u> a separate limit, not subject to another limit in the StarStone Policy.  As such, it is not a sublimit and StarStone must provide coverage following the exhaustion of the Limited Assault or Battery Liability Coverage limit.

WHEREFORE, based on the foregoing arguments and authority, Polynesian requests this Honorable Court grant summary judgment in its favor and against StarStone.

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on July 1, 2019 I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the

following:

Rory Eric Jurman, Esquire
Vivian Arango Loshak, Esquire
HINSHAW & CULBERTSON LLP
One East Broward Blvd., Suite 1010
Fort Lauderdale, FL  33301
Attorneys for StarStone
rjurman@hinshawlaw.com
rejeserve@hinshawlaw.com
vloshak@hinshawlaw.com
dsmellie@hinshawlaw.com

Todd R. Falzone, Esquire
Karina D. Rodrigues, Esquire
KELLEY UUSTAL PLC
500 North Federal Highway, Suite 200
Fort Lauderdale, FL  33301
Attorneys for Andrew Bickford
trf@kulaw.com
kdr@kulaw.com

Scott Busby, Esquire
BUSTBY NEGIN, INC.,
8200 Roberts Drive, Suite 201
Atlanta, GA  30350
busby@busbynegin.com

     */s/Gregory D. Swartwood*
Mark A. Nation, Esquire
Board Certified Civil Trial Attorney
Board Certified Business Litigation Attorney
Florida Bar No. 968560
E-mail:  mnation@nationlaw.com

Gregory D. Swartwood, Esquire
Florida Bar No. 858625
Email:  gswartwood@nationlaw.com

THE NATION LAW FIRM, LLP
570 Crown Oak Centre Drive
Longwood, FL  32750
Telephone:     (407) 339-1104
Facsimile:      (407) 339-1118
Attorneys for Defendant Polynesian Inn, LLC
d/b/a Days Inn of Kissimmee