UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STARSTONE NATIONAL INSURANCE
COMPANY,

      Plaintiff,

v.

POLYNESIAN INN, LLC d/b/a DAYS INN
OF KISSIMMEE; ANDREW JAMES
BICKFORD; and JANE DOE, as Personal
Representative of the Estate of ZACKERY
RYAN GANOE,

      Defendants.

CASE NO.:   6:18-cv-1048-ORL-31-TBS
**DISPOSITIVE MOTION**

## PLAINTIFF, STARSTONE NATIONAL INSURANCE COMPANY'S, MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, STARSTONE NATIONAL INSURANCE COMPANY ("Starstone" or "Plaintiff"), through its undersigned counsel, pursuant to Fed. R. Civ. P. 56, M.D. Local Rule 3.01, and this Court's Scheduling Order [D.E. 24], hereby files its Motion for Summary Judgment and Incorporated Memorandum of Law and states:

## INTRODUCTION

Starstone is entitled to summary judgment as a matter of law on the plain meaning and legal effect of its Policy as coverage is precluded under its Policy issued to POLYNESIAN INN, LLC d/b/a DAYS INN OF KISSIMMEE ("Polynesian"), with respect to claims arising out of the April 11, 2017 subject incident, which is detailed below, including claims by Defendants ANDREW JAMES BICKFORD ("Bickford") and JANE DOE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ZACKERY RYAN GANOE (the "Estate of Ganoe"). Specifically, there is no coverage under the Starstone excess Policy because Bickford

and the Estate of Ganoe are seeking damages for injuries sustained as a result of an assault and/or battery, which is subject to a sublimit of liability in the primary Northfield Policy, and the excess Starstone Policy does not provide coverage for any claims that are subject to a sublimit in the primary policy unless coverage for such sublimit is specifically endorsed to the Starstone Policy.   As there is no such sublimit endorsed to the Starstone Policy, there is no coverage thereunder. In addition, there is no coverage under the Starstone Policy because the insuring agreement expressly provides that the Policy does not provide excess coverage for any limits not specifically noted on Item 6 of Starstone's Declarations, and the applicable limit for assault and battery offenses (irrespective of whether or not it is a sublimit) is not noted thereunder. There are no genuine issues of material fact in dispute and summary judgment in favor of Starstone is appropriate.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### The Subject Incident

1.      On April 11, 2017, Zackery Ganoe and Bickford were guests at the Days Inn of Kissimmee, owned by Defendant POLYNESIAN INN, LLC d/b/a DAYS INN OF KISSIMMEE ("Polynesian"), a hotel located in Kissimmee, Florida. *See* Bickford's Demand Letter dated May 24, 2018 ("Bickford Demand"), attached and incorporated hereto as ***Exhibit "A"*** at pp. 1-2;[1] Bickford's Responses to Starstone's Request for Admissions ("Bickford's RFA Resp.") attached and incorporated hereto as ***Exhibit "B,"*** No. 9, 10; Deposition Transcript of Andrew Bickford ("Bickford Dep. Tr."), attached and incorporated heretofore as ***Exhibit "C,"*** at 42:12-14, 43:14–44:5, 44:24-45:10; Bickford's Better Interrogatory Answers dated May 3, 2019 ("Bickford Better

---

[1] Photographs, medical bills and other enclosures to Bickford's Demand have been omitted for HIPPA and privacy considerations. Starstone can, however, file the enclosures to the Demand Letter upon request.

303937488v2 1020617

ROG Answers"), attached and incorporated heretofore as ***Exhibit "D"*** at no. 2-3; Polynesian's Responses to Requests for Admissions ("Polynesian's RFA Resp."), attached and incorporated heretofore as ***Exhibit "E,"*** at no. 9-10; Polynesian's Interrogatory Answers ("Polynesian's ROG Answers"), attached and incorporated heretofore as ***Exhibit "F,"*** at no. 2.

2.      Specifically, Bickford and Ganoe rented a room together, paying in cash, intending to stay there for the "night," which was in fact the early morning hours of April 11, 2017. *See **Ex. "C,"*** Bickford Dep. Tr., at 44:24-45:10; *see also **Ex. "A,"*** Bickford Demand, at p. 2; ***Ex. "F,"*** Polynesian's ROG Answers, at no. 2.

3.      According to Bickford, Ganoe was known to be a drug dealer. *See **Ex. "C,"*** Bickford Dep. Tr., at 32:2-14. Bickford and Ganoe spent the night listening to music, drinking beer, and using cocaine. *See id.* at 45:13-48:10, 51:21-23.  Bickford testified he was drunk and high on cocaine on the night in question. *See id.* at 45:10-46:1, 48:8-10.

4.       Emerita Mapp was invited to the hotel room, arriving sometime before sunrise. *See id.* at 48:12-49:15, 49:25-50:10. Ms. Mapp stayed in the room "hanging out" with Mr. Ganoe and Mr. Bickford. *See id.* at 58:8-10.

5.      Early in the morning on April 11, 2017, Bickford left the hotel room to get a continental breakfast in the hotel lobby. *See id.* at 58:21-59:9; *see also **Ex. "A,"*** Bickford's Demand at p. 2; ***Ex. "D,"*** Bickford Better ROG Answers, at nos. 2-3; ***Ex. "F,"*** Polynesian's ROG Answers, at no. 2.

6.      When Bickford returned to the hotel room, he saw Mr. Ganoe's body "propped up against the bed." *See **Ex. "C,"*** Bickford Dep. at 61:2-24. Bickford saw Mr. Ganoe "lying motionless covered in blood." *See **Ex. "A,"*** Bickford Demand, at p. 2; ***Ex. "F,"*** Polynesian's ROG Answers, at no. 2.

7.      Ms. Mapp then stabbed Bickford in the throat, held him at gunpoint, and went through his pockets, stealing his belongings. *See Ex. "C,"* Bickford Dep., at 60:15-62:21; *see also Ex. "A,"* Bickford Demand, at p. 2; *Ex. "F,"* Polynesian's ROG Answers, at no. 2.

8.      Ms. Mapp left Mr. Bickford helpless and bleeding to death. *See Ex. "A,"* Bickford's Demand at p. 2; *see also Ex. "C,"* Bickford Dep., at 62:4-20.

9.      Mr. Bickford did not consent to the stabbing. *See Ex. "C,"* at 67:18-20.

10.     Bickford testified during his deposition that the photographs attached and incorporated hereto as *Composite Exhibit "G"* accurately depict the hotel room after the murder and stabbing. *See Ex. "C,"* Bickford Dep. Tr., at 64:24-65:17; *Comp. Ex. "G."*

11.     As a result of the subject incident and Ms. Mapp's actions, Ganoe died. *See Ex. "C,"* Bickford Dep. Tr. at 61:4-24, 68:11-14; *see also Ex. "A,"* Bickford's Demand, at p. 2; *Ex. "D,"* Bickford's Better ROG Answers, at no. 2-3; *Ex. "E,"* Polynesian's RFA Resp., at no. 12-13 (admitting that "Zackery Ganoe was killed at the Days Inn on or about April 11, 2017").

12.     As a result of the subject incident, Bickford testified he sustained personal injuries, including a collapsed lung and paralysis of vocal cords. *See Ex. "C,"* Bickford Dep. at 67:13-68:10; *Ex. "A,"* Bickford Demand, at pp. 5-6.

### The Northfield Policy

13.     At all times material to this action, Polynesian was insured by a primary general liability policy issued by Northfield Insurance Co. ("Northfield") and a follow-form excess liability policy issued by Starstone. *See Ex. "B,"* Bickford's RFA Resp., at No. 14-15; *Ex. "E,"* Polynesian's RFA Resp., at no.s 14-15.

14.     Northfield Insurance Company issued a primary commercial general liability policy to Polynesian, No. WS215327, with a policy period of March 23, 2017 through March 23,

303937488v2 1020617

2018 (the "Northfield Policy"). *See* Certified Copy of Northfield Policy [D.E. 1-2] at 15; *see also* Northfield's Insurance Disclosure pursuant to Fla. Stat. §627.4137 ("Northfield's 627 Disc.") attached and incorporated heretofore as ***Exhibit "H;"*** *see also **Ex. "E,"*** Polynesian's RFA Resp., at no. 14.

15.     The Declarations of the Northfield Policy expressly states that the Policy consists of one single coverage part – the Commercial General Liability Coverage Part:

| | |
|---|---|
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| **COVERAGE PART DESCRIPTION** | **PREMIUM** |
| Commercial General Liability Coverage Part | $ ▬▬▬ |
| **PREMIUM TOTAL** | $ ▬▬▬ |
| Policy Fee | $ ▬▬ |
| Service Fee | $ ▬▬▬ |
| Inspection Fee | $ ▬▬▬ |
| Surplus Lines Tax | $ ▬▬ |
| **POLICY TOTAL** | $ ▬▬▬ |

*See* Certified Copy of Northfield Policy [D.E. 1-2] at 2; ***Ex. "H,"*** Northfield's 627 Disc.

16.     The Northfield Policy provided coverage with limits of liability of $1 million per occurrence, subject to a $2 million aggregate. *See* Certified Copy of Northfield Policy [D.E. 1-2] at 15; *see also **Ex. "H,"*** Northfield's 627 Disclosure.

17.     The Northfield Policy contained an Endorsement titled "Limited Assault or Battery Liability Coverage" (the "A&B Endorsement"), which "modifies" the insurance provided under the Commercial General Liability Coverage Part, and which states in pertinent part:

**LIMITED   ASSAULT   OR   BATTERY   LIABILITY
COVERAGE**

\*     \*     \*     \*

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE OF ASSAULT OR BATTERY LIMITS**

**Assault or Battery Aggregate Limit**          $50,000

5

**Each Assault and Battery Offense Limit**   $25,000

**PROVISIONS**

*     *     *     *

**2.** The following exclusion is added to Paragraph **2., Exclusions, of SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Assault Or Battery**

"Bodily injury" or "property damage" arising out of any act of "assault" or "battery" committed by an person, including any act or omission in connection with the prevention or suppression of such "assault" or "battery".

*     *     *     *

**4.** The following is added to **SECTION I – COVERAGES:**

**COVERAGE – ASSAULT OR BATTERY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "assault or battery offense" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments and settlements under Coverage A, Coverage B, Coverage – Assault Or Battery Liability, Coverage – Abuse Or Molestation Liability (if applicable) or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

6

**b.** This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" caused by an "assault or battery offense" arising out of your business but only if the "assault or battery offense" was committed in the "coverage territory" during the policy period. An "assault or battery offense" involving multiple, continuous, sporadic or related acts of "assault" or "battery" will be deemed to have been committed on the date the first of such acts is committed, regardless of when such acts are actually committed.

*  *  *  *

**7.** The following is added to **SECTION III – LIMITS OF INSURANCE:**

**Assault Or Battery Liability Limits**

Subject to the General Aggregate Limit, the Assault Or Battery Aggregate Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay for the sum of all damages under Coverage – Assault or Battery Liability.

Subject to the Assault Or Battery Aggregate Limit, the Each Assault Or Battery Offense Limit shown in the Schedule Of Assault Or Battery Limits is the most we will pay under Coverage – Assault or Battery Liability for the sum of all damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "assault or battery offense".

*  *  *  *

**8.** The following is added to Paragraph 2. of **SECTION III – LIMITS OF INSURANCE** as a subparagraph identifying another coverage to which the General Aggregate Limit applies:

Damages under Coverage – Assault Or Battery Liability.

9. The following is added to the DEFINITIONS Section:

*  *  *  *

"Assault" means any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury.

"Assault or battery offense" means a single act of "assault" or "battery, or multiple continuous, sporadic or related acts of

7

"assault" or "battery, committed by any person or by two or more persons acting together.

All such acts of "assault" or "battery" will be deemed to be one "assault or battery offense", regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

"Assault or battery perpetrator" means any person who actually or allegedly commits any "assault" or "battery", and any other person acting together with such person.

"Battery" means any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.

*          *          *          *

[D.E. 1-2] at 65-68; *see also **Ex. "H,"*** Northfield's 627 Disclosure.

18.     No additional premium was charged for the "A&B Endorsement."  *See* Certified Copy of Northfield Policy [D.E. 1-2] at 15; ***Ex "H,"*** Northfield's 627 Disclosure.  Rather, the "Commercial General Liability Coverage Part Declarations" states that the premium for the A&B Endorsement was "included." [D.E. 1-2] at 15; ***Ex "H."*** Specifically, it provides:

**PREMIUM**

| Loc. # | Classification | Code No. | Premium Base | Rate Pr/CO | Rate All Other | Advance Premium Pr/CO | Advance Premium All Other |
|---|---|---|---|---|---|---|---|
| 001 | Hotels and Motels - with pools or beaches - less than four stories. - Products-completed operations are subject to General Aggregate Limit. | 45190 | 6- 450,000 | Included | 11.583 $ | Included | $ ███ |
| | Additional Insureds - | t l Fully Earned | | | 100.000 $ | | $ ███ |
| | Hired and Non-Owned Auto Liab | | | | $ | | $ ███ |
| | Limited Coverage - Assault or Battery | | | | $ | Included | $ Included |
| | | | | Subline Premiums | $ .00 | | $ ███ |
| | | | | Total Advance Premium | | $ ███ | |

**Starstone Policy**

19.     Starstone insured Polynesian under Follow Form Excess Liability Insurance Policy No. 77238T160ALI, with a policy period of June 3, 2016 to June 3, 2017 (the "Starstone Policy"). *See* Starstone Policy [D.E. 1-3] at 3-4; *see also* Certified Copy of Starstone Policy attached and incorporated heretofore as ***Exhibit "I;"*** *see also **Ex. "B,"*** Bickford's RFA Resp., at No. 15; ***Ex. "E,"*** Polynesian's RFA Resp., at no. 15.

20.     The Starstone Policy states in pertinent part:

**SECTION I. – COVERAGE**

A.     We will pay on behalf of the Insured the sums in excess of the Total Limits of Underlying Policies shown in **Item 6.** of the Declarations that the Insured becomes legally obligated to pay as damages.

\*       \*       \*

D.     Notwithstanding **A.**, **B.**, and **C.** above, in no event will this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy**:

1. Liberalization clause;

2. Crisis Management or Crisis Response endorsement; or

3. Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

\*       \*       \*

Starstone Policy [D.E. 1-3] at 6; *see also **Ex. "I,"*** Cert. Copy of Starstone Policy.

21.     The A&B Endorsement was not specifically endorsed to the Starstone Policy. *See* Starstone Policy [D.E. 1-3]; *see also **Ex. "I,"*** Cert. Copy of Starstone Policy**.**

22.     Item 6. of the Starstone Policy provides:

303937488v2 1020617

ITEM 6          TOTAL LIMITS OF UNDERLYING POLICIES

$1,000,000          Per Occurrence

$2,000,000          Other Aggregate

Included in GL          Products/Completed Operations Aggregate

$1,000,000          Personal and Advertising Injury

$1,000,000          Combined Single Limit

Starstone Policy [D.E. 1-3] at 3, 17; *see also Ex. "I,"* Cert. Copy of Starstone Policy.

23.      Additionally, pursuant to Endorsement 13, the Starstone Policy identifies the

Northfield Policy as underlying insurance:

It is agreed that the following underlying on the schedule of underlying insurance is amended as follows:

Company:          Northfield Ins. Co.

Policy Number:          WS215327

Coverage:          COMMERCIAL GENERAL LIABILITY

Policy Period:          3/23/2017 to 3/23/2018

Limits of Liability:

$1,000,000          Per Occurrence

$2,000,000          General Aggregate Limit

$2,000,000          Products/Completed Operations Aggregate

$1,000,000          Personal and Advertising Injury

Starstone Policy [D.E. 1-3] at 32; *see also Ex. "I,"* Cert. Copy of Starstone Policy.

## Claims Arising out of the Subject Incident

24.      Bickford and the Estate of Ganoe have made claims against Polynesian as a result

of the Subject Incident. *See, e.g.* Bickford's Demand, ***Ex. "A;"*** *see* also Estate of Ganoe Release

("Ganoe Release") attached and incorporated heretofore as ***Exhibit "J."***

10

25.     The Estate of Ganoe settled its claim for the $25,000 per offense sublimit in the A&B Endorsement of the Northfield Policy. *See Ex. "J,"* Ganoe Release.

## INCORPORATED MEMORANDUM OF LAW

### I.     Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Gas Kwick, Inc. v. United Pacific Ins. Co.*, 58 F.3d 1536 (11th Cir. 1995). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 248.

A party opposing summary judgment must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *St. Paul Fire & Marine Ins. Co. v. Cypress Fairway Condo. Ass'n*, 2015 U.S. Dist. LEXIS 94012, *7 (M.D. Fla. 2015). The non-moving party must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (emphasis added); *Holifield v. Reno*, 115 F.3d 1555, 1556-57, 1564 n.6 (11th Cir. 1997); *Maronda Homes, Inc. of Fla. v. Progressive Express Ins. Co.,* 2015 U.S. Dist. LEXIS 103893 (M.D. Fla. 2015). Summary judgment is particularly appropriate to resolve questions of insurance coverage, since the interpretation of a written contract is a matter of law. *Technical Coating Applicators, Inc. v. U.S.*

*Fidelity and Guar. Co.*, 157 F.3d 843 (11th Cir. 1998); *Jones v. Utica Mutual Ins. Co.*, 463 So. 2d 1153 (Fla. 1985).

## II.   Choice of Law

This matter comes before the Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. Section 1332. Accordingly, Florida choice of law rules control the substantive coverage issues presented in this case.  *See Shapiro v. Associated Intern. Ins. Co.*, 899 F. 2d 1116, 1118 (11th Cir. 1990).   Under *lex loci contractus*, which governs the interpretation and validity of contracts, the applicable law is "the law of the state in which the contract is made, i.e., where the *last act* necessary to complete the contract is done." *Granite State Ins. Co. v. Am. Bldg. Materials, Inc.*, 8:10-CV-1542-T-24, 2011 WL 6025655, at *3 (M.D. Fla. 2011). In the present case, the insured is a Florida limited liability company and the Policy was delivered to the insured in Florida, per the Declarations pages. *See* Starstone Policy [D.E. 1-3]; ***Ex. "I,"*** Cert. Copy of Starstone Policy*; see also* Certified Copy of Northfield Policy [D.E. 1-2]; ***Ex. "H,"*** Northfield's 627 Disclosure. Thus, choice of law rules mandate the application of Florida law.

## III.   Contract Interpretation

Florida law governs the interpretation of the policies at issue. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). Every contract, such as an insurance policy, is construed according to its plain language. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Where the language of an insurance policy is plain and unambiguous, "there is no need for judicial construction and the contract must be enforced as written." *Fla. Power & Light Co. v. Penn Am. Ins. Co.*, 654 So. 2d 276, 278 (Fla. 4th DCA 1995) (citing *Great Global Assur. Co. v. Shoemaker*, 599 So. 2d 1036 (Fla. 4th DCA 1992)). The policy terms must be given the

303937488v2 1020617

plain and ordinary meaning as understood by the "average man." *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997).

If a policy provision is clear and unambiguous, the court cannot indulge in construction or interpretation of its plain meaning, and should simply enforce it according to its terms, whether it is a basic insuring clause or an exclusionary provision. *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985); *see also Allstate Ins. Co. v. Shofner*, 573 So. 2d 47, 49 (Fla. 1st DCA 1990) (holding that ambiguities are to be construed in favor of coverage but only after ordinary rules of construction are applied). In other words, in the absence of ambiguity, courts are not permitted to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the manifest intention of the parties. *Shofner*, 573 So. 2d at 49. Policy language is ambiguous only if it is susceptible to more than one reasonable interpretation. *Anderson*, 756 So. 2d at 34. **Importantly, a provision is not ambiguous simply because it is complex or requires analysis.** *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (emphasis added). Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the policy construed in favor of the insured. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998).

### IV.   The Subject Incident is an "Assault" and/or "Battery" and the A&B Endorsement Applies

#### A.   The Subject Incident is an "Assault" and/or "Battery"

The Subject Incident qualifies as an assault and/or battery under the Northfield Policy, making the A&B Endorsement applicable. The Northfield Policy defines "assault" as "any attempt to threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury." *See* Cert. Copy of Northfield Policy [D.E. 1-2] at 68.

"Battery" is defined as "any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected." *See id.*

During his deposition, Bickford testified Ms. Mapp intentionally made physical contact and used force against him, without his consent, resulting in his personal injuries. *See **Ex. "C,"*** Bickford's Dep. Tr., at 66:9-68:14. *See supra* at ¶¶1-12. Specifically, as noted above, Mr. Bickford and Mr. Ganoe, a known drug dealer, rented a room at the Days Inn of Kissimmee and began drinking, using cocaine and listening to music. At some point in the middle of the night, Ms. Mapp was invited to the hotel room where she, Mr. Bickford, and Mr. Ganoe were "hanging out" until Mr. Bickford left the room to get breakfast. When Mr. Bickford returned, he saw Mr. Ganoe's body motionless and propped up against the bed. Ms. Mapp then physically attacked Mr. Bickford, stabbed him in the throat, held a gun to his head, robbed him, and left him for dead. *See supra* at ¶¶1-12. Photographs of the incident scene evidence the bloody horror of the night in question. *See **Comp. Ex. "G,"*** Photographs of the Subject Incident Scene; *see also **Ex. "C,"*** Bickford's Dep. Tr., at 64:24-65:17 (testifying that these photographs accurately depict the Subject Incident scene). As a result of the Subject Incident, Mr. Ganoe died and Mr. Bickford sustained personal injuries. *See supra* at ¶¶11-12. Thus, there is no question of material fact that Ms. Mapp's actions and the Subject Incident qualify as an assault and/or battery, as defined in the Northfield Policy.

### B.     The A&B Endorsement Applies

The A&B Endorsement in the Northfield Policy provides, in relevant part:

> **b.** This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" caused by an "assault or battery offense" arising out of your business but only if the "assault or

303937488v2 1020617

battery offense" was committed in the "coverage territory" during the policy period.

*     *     *     *

"Assault or battery offense" means a single act of "assault" or "battery," or multiple continuous, sporadic or related acts of "assault" or "battery," committed by any person or by two or more persons acting together.

*     *     *     *

*See* Cert. Copy of Northfield Policy [D.E. 1-2], at 66; *see also* **Ex. "H,"** Northfield's 627 Disclosure. The A&B Endorsement also provides that the only available limit for "assault or battery offenses" is the A&B sublimit of $25,000 per offense. Specifically, the A&B Endorsement provides there is no coverage under the Each Occurrence limit of $1 million dollars for "assault" or "battery" offenses and states:

**2. The following exclusion is added to Paragraph 2., Exclusions, of SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Assault Or Battery**

"Bodily injury" or "property damage" arising out of any act of "assault" or "battery" committed by any person, including any act or omission in connection with the prevention or suppression of such "assault" or "battery".

*See* [D.E. 1-2], at 65; *see also* **Ex. "H."**

Thus, the Subject Incident constitutes an "assault" and/or "battery" and therefore an "assault or battery offense," making the A&B Endorsement and its corresponding sublimit applicable. *See* **Ex. "B,"** Bickford's RFA Resp., at No. 22 (Admitting "the Northfield Policy provides coverage for the April 11, 2017 incident under the A&B Endorsement. . .").

303937488v2 1020617

## V.     The A&B Endorsement Provides a Sublimit for Assault and Battery Offenses

The A&B Endorsement in the Northfield Policy provides a sublimit of liability of $25,000 per assault and battery offense. Pursuant to the plain and unambiguous terms of the Starstone Policy, it does not follow form to, or provide coverage for, any claims that are subject to a sublimit of liability in the Followed Policy, *i.e.* the Northfield Policy. *See* Starstone Policy [D.E. 1-3] at 6; *see also Ex. "I,"* Certified Copy of Starstone Policy.  Defendants claim that the limit under the A&B Endorsement is not a sublimit, but rather is an additional limit of "stand alone" coverage. Defendants are getting tangled in nonsensical semantics to try to create coverage under the Starstone Policy that simply does not exist.

The Declarations Page to the Northfield Policy expressly states that the Policy consists of one single coverage part – the Commercial General Liability Coverage Part:

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| COVERAGE PART DESCRIPTION | | PREMIUM |
|---|---|---|
| Commercial General Liability Coverage Part | $ | |
| PREMIUM TOTAL | $ | |
| Policy Fee | $ | |
| Service Fee | $ | |
| Inspection Fee | $ | |
| Surplus Lines Tax | $ | |
| POLICY TOTAL | $ | |

*See* Cert. Copy of Northfield Policy [D.E. 1-2]; *Ex. "H,"* Northfield's 627 Disclosure. The Commercial General Liability Coverage Part is then modified by several endorsements, including the A&B Endorsement.  *See id.*

Contrary to Defendants' contention that the A&B Endorsement is a "stand alone" coverage, it is rather an Endorsement that expressly states it "*modifies* insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART."  *See* Cert. Copy of Northfield Policy [D.E. 1-2] at 65 (emphasis added); *Ex. "H,"* Northfield's 627 Disclosure. "Endorsement[s] modif[y] and amend[] the insurance contract." *Allstate Fire & Cas. Ins. Co. v.*

*Hradecky*, 208 So. 3d 184, 187, 2016 Fla. App. LEXIS 15904, *6, 41 Fla. L. Weekly D 2413; *see also Travelers Cas. & Sur. Case Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1025 (S.D. Cal. 2006) ("Endorsements are modifications to the basic insuring forms in the policy [and] may alter or vary any term or condition of the policy."). "[A]n endorsement is an amendment to or modification of an existing policy of insurance." *Adams v. Explorer Ins. Co.*, 132 Cal. Rptr. 2d 24, 33 (Cal. Ct. App. 2003). **"It is not a separate contract of insurance."** *Id.* (emphasis added). **"Standing alone, an endorsement means nothing."** *Id.* (emphasis added). **"[A]n endorsement is a part of the Policy, not a contract unto itself."** *Great Am. Assur. Co. v. Sanchuk, LLC*, 2012 U.S. Dist. LEXIS 154003, *18-19, 2012 WL 5306354 (M.D. Fla. 2012) (emphasis added); *see also Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 649 S.E.2d 602, 607 n.1 (Ga. App. 2007) ("Endorsements are not considered a part of the 'face of the policy.'"); *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 177 Vt. 215, 862 A.2d 251, 258 (Vt. 2004) ("An endorsement is a writing added or attached to a policy which either expands or restricts the insurance in the policy.").

Here, the A&B Endorsement does not stand alone.  Rather, it modifies various provisions of the already existing CGL Coverage Part. As such, the applicable limit of the A&B Endorsement for assault and battery offenses of $25,000 per offense constitutes a "sublimit." The International Risk Management Institute defines "sublimit" as "a limitation in an insurance policy on the amount of coverage available to cover a specific **type** of loss. *A sublimit is a part of, rather than in addition to, the limit that would otherwise apply to the loss. In other words, it places a maximum on the amount available to pay that <u>type</u> of loss, rather than providing additional coverage for that type of loss.*" IRMI Online, Glossary of Insurance Risk Management     Terms,     http://www.irmi.com/online/insurance-glossary/terms/s/sublimit.aspx

(emphasis added) (last visited June 24, 2019); *Formosa Plastics Corp., U.S.A. v. Ace American Insurance Co.*, 2010 WL 4687835 at *7 (D.N.J. Nov. 9, 2010) (utilizing Glossary of Insurance Risk Management for the definition of "sublimit"); *see also Philadelphia Indemnity Ins. Co. v. Baby Fold, Inc*., 2018 WL 4616353 at *8 (N.D. Ill. 2018) (concluding that $250,000 limit in an endorsement tilted Sexual or Physical Abuse or Molestation Liability Coverage Form Sublimit was, in fact, a "sublimit" because it was included within, and was not excess of, nor in addition to the Limits of Insurance stated in the Declarations).

**Absent the A&B Endorsement, there would be coverage for an "assault" and/or "battery," subject to the $1 million Each Occurrence limit**. Coverage A in the Northfield Policy, which applies to "bodily injury" liability, is subject to a $1 million Each Occurrence limit.  The A&B Endorsement caps the carrier's exposure for "assault and battery offenses" by providing a smaller, lesser sublimit of $25,000 per offense for such claims. The A&B Endorsement does this by excluding such offenses under Coverage A to make clear that such offenses are **not** subject to the $1 million Each Occurrence limit as well as the A&B sublimit. The A&B Endorsement then provides limited and smaller coverage for specific losses/perils, *i.e.* assault and battery offenses. "The very concept of a sublimit is to cap a carrier's exposure at an amount below the policy limit if a particular type of covered peril caused the loss." *Orient Overseas Assocs. v. XL Ins. Am., Inc.*, 2016 NY Slip Op 31009(U), ¶ 16, 2016 N.Y. Misc. LEXIS 2048 (N.Y. Sup. Ct. May 11, 2016).

Again, but for the A&B Endorsement, assault and battery offenses would be subject to the $1 million Each Occurrence limit.  This is wholly uncontested and Bickford and Polynesian admit the same. *See, e.g.* Bickford's RFA Resp., ***Ex. "B,"*** at ¶20 (admitting that "prior to endorsement, the Northfield Policy provided coverage for assault and battery under Coverage A.

303937488v2 1020617

. . . [which is] limited to the Each Occurrence Limit ($1,000,000.00)."); *see also* **Ex. "E,"** Polynesian's RFA Resp., at no. 20 (same admission). Thus, the effect of the A&B Endorsement is that it places a limit on coverage for perils associated with assaults and batteries, instead of providing additional coverage for that type of loss, thereby making it a sublimit. *See supra* IRMI online, Glossary of Insurance Risk Management Terms, http://www.irmi.com/online/insurance-glossary/terms/s/sublimit.aspx (last visited June 24, 2019).

Contrary to Defendants' arguments, the failure of the A&B Endorsement to use the word "sublimit" in its title is inconsequential. The A&B Endorsement is titled "Limited Assault and Battery Liability Coverage," which evidences that the A&B Endorsement limits the otherwise available coverage for assault and battery offenses/perils. Even more, Northfield – the entity that wrote and issued the policy – issued a statutory affidavit and insurance disclosure pursuant to section 627.4137 of the Florida Statutes and noted that the applicable limit for assault and battery offenses is the $25,000 "sublimit." *See* Northfield's 627 Disclosure, **Ex. "H."** Notably, it matters not for Northfield as to whether the A&B Endorsement provides a sublimit or not, and therefore Northfield has no "dog in this fight" so to speak. Northfield's exposure here is $25,000 per offense, subject to a $50,000 aggregate, irrespective of whether the limits at issue are sublimits.

In *Century Sur. Co. v. Seductions*, *LLC*, decided by the Eleventh Circuit, claims ensued against an insured nightclub, Seductions, by a patron when the nightclub's employees allegedly beat and threw a patron out of the nightclub for refusing to leave. 349 Fed. Appx. 455, 456, 2009 U.S. App. LEXIS 22783, *3 (11th Cir. 2009). Seductions was insured with Century Surety Co. ("Century") under a liability policy with Each Occurrence limits of $1 million. *See id.* The policy contained two pertinent endorsements - forms CGL 1704 and CGL 1717. *See id.* CGL 1704 explicitly excluded coverage for assault and battery claims. *Id.* "CGL 1717 provided that '[t]he

specific coverage excluded under CGL 1704 is reinstated on a limited basis' and purported to establish a $25,000 per occurrence sublimit for 'covered loss arising from an assault and battery.'" *Id.*

In construing CGL 1717, the Court noted it provided a **sublimit** of liability of $25,000 with respect to assault and battery losses. *See id.* (emphasis added). Notably, absent endorsement CGL 1717, the policy did not provide coverage for assault and battery claims (by virtue of CGL 1704). *See id* at 456. CGL 1717 added coverage not otherwise available and the Court *still* found the same to be a sublimit. The present case is much clearer in that the A&B Endorsement is a sublimit because, as discussed above, absent the A&B Endorsement, there **is** coverage for assault and battery offenses for $1 million Each Occurrence. The A&B Endorsement merely limits the coverage available to assault and battery perils to $25,000 per offense.

Accordingly, the A&B Endorsement provides a sublimit of coverage in that it provides a smaller, lesser limit ($25,000 per offense) to perils associated with assault and battery offenses than would otherwise apply ($1 million Each Occurrence limit).

## VI.     The Starstone Policy Does not Provide Coverage

There is no coverage under the Starstone Policy for claims arising out of the Subject Incident because they are subject to the sublimit of liability in the A&B Endorsement, and that sublimit was not specifically endorsed to the Starstone Policy. The Starstone Policy provides:

> D.     Notwithstanding **A., B.,** and **C.** above, in no event will this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy**:

*     *     *     *

20

> 3. ***Sublimit of liability, unless coverage for such sublimit
> is specifically endorsed to this Policy***.

Starstone Policy [D.E. 1-3] at 6 (emphasis added); *see also **Ex. "I,"*** Certified Copy of Starstone
Policy.  As noted above, the A&B Endorsement sublimit applies here, and it is not specifically
endorsed to the Starstone Policy. *See* [D.E. 1-3]; *see also **Ex. "I."*** Therefore, there is no
coverage under the Starstone Policy for the claims arising out of the Subject Incident, which are
covered by and subject to the A&B Endorsement's sublimit in the underlying Northfield Policy.

    <u>Additionally</u>, even if the Court were to accept Defendants' contention that the A&B
endorsement provides "stand alone" limits rather than a sublimit, there is no coverage under the
Starstone Policy.  The insuring agreement of the Starstone Policy specifically provides:

> A.    We will pay on behalf of the Insured the sums in excess of
> the Total Limits of Underlying Policies shown in **Item 6.** of
> the Declarations that the Insured becomes legally obligated
> to pay as damages.

*See* [D.E. 1-3] at 6; *see also **Ex. "I,"*** Certified Copy of Starstone Policy.  Item 6 of the
Declarations schedules the following:

| ITEM 6 | TOTAL LIMITS OF UNDERLYING POLICIES |
|---|---|
| $1,000,000 | Per Occurrence |
| $2,000,000 | Other Aggregate |
| Included in GL | Products/Completed Operations Aggregate |
| $1,000,000 | Personal and Advertising Injury |
| $1,000,000 | Combined Single Limit |

Starstone Policy [D.E. 1-3] at 3, 17; *see also **Ex. "I."*** Nowhere in Item 6 is the A&B limit –
sublimit or otherwise – "shown" as required under Starstone's insuring agreement.  Per its very
terms, the Starstone Policy is only excess to the total limits of the underlying policies, which per

303937488v2 1020617

Item 6 do not include the limits applicable to the Subject Incident. **Thus, irrespective of whether the A&B Endorsement's limit is a sublimit – although Starstone vehemently contends it is – the plain and ordinary terms of the insuring language of the Starstone Policy dictate that it does not provide excess coverage for the claims arising out of the Subject Incident.**

Follow form excess policies are not meant to "bridge the gap" like umbrella policies. Excess policies provide additional limits of coverage, but in a restrictive manner and not with respect to all claims. For example, excess policies may not cover certain claims even when an underlying policy does, such as the present case. *See White Springs Agric. Chems., Inc. v. Gaffin Indus. Servs.*, No. 3:11-cv-998-J-32JRK, 2015 U.S. Dist. LEXIS 29092, at *8 (M.D. Fla. Mar. 10, 2015) ("In the insurance industry, the language of an excess policy can follow the form of the underlying policy, but may not where the excess insurer includes additional exclusions outlined in its own policy.").  Umbrella policies, on the other hand, provide additional limits and typically offers additional coverage otherwise not covered in the underlying policy.  *See, e.g.*, *Insurance Coverage Disputes* §1.03 (2019) ("'Umbrella' insurance is a special type of coverage that can incorporate elements of both primary and excess coverage…. [U]mbrella policies may serve as primary coverage with respect to liabilities covered by the umbrella but not by any primary coverage held by the policyholder. Thus, umbrella coverage may serve as primary insurance with respect to certain areas of liability while serving as excess coverage with respect to others.").

Here, the Starstone Policy does not provide coverage for the claims arising out of the Subject Incident because such claims are subject to the A&B sublimit in the Northfield Policy, which is not endorsed to the Starstone Policy. Additionally, and independently, the insuring language of the Starstone Policy expressly provides that said policy does not provide excess

coverage to any limits not specifically shown in Item 6 of the Declarations, and the applicable A&B limit (irrespective of whether or not it is a sublimit) is not noted thereunder.  Under the plain and unambiguous language of the Starstone Policy, the Subject Incident is not covered. The undisputed facts therefore establish that Starstone is entitled to summary judgment as a matter of law.

## **CONCLUSION**

There is no issue of material fact that Bickford and the Estate of Ganoe's claims arose out of an "assault" and/or "battery" and therefore, such claims are subject to the A&B Endorsement of the Northfield Policy. Contrary to the Defendants' arguments, the A&B Endorsement is not stand alone coverage. The A&B Endorsement limits the coverage that is otherwise available for "assault and battery offenses" from $1,000,000 per claim to $25,000 per offense. The Starstone Policy provides there is no excess coverage for any claims that are subject to a sublimit in the underlying policy, which is not specifically endorsed. The claims resulting from the Subject Incident are subject to the A&B sublimit, which is not specifically endorsed to the Starstone Policy and, thus, there is no coverage under the Starstone Policy for same.

Additionally, the Starstone Policy, by its very terms, does not provide excess coverage for any limit not specifically "shown" in its Declarations and the A&B Endorsement is not noted thereunder. The Starstone Policy therefore does not provide excess coverage for claims subject to the A&B Endorsement limit – sublimit or otherwise.  There are no genuine issues of material fact and summary judgment is proper.

WHEREFORE, Starstone National Insurance Company respectfully requests this Court enter summary judgment in its favor and for all such other relief this Court deems just and proper under the circumstances.

303937488v2 1020617

Dated: July 1, 2019

Respectfully submitted,

HINSHAW & CULBERTSON LLP
One East Broward Boulevard, Suite 1010
Fort Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024

By:     *s/Rory Eric Jurman*
        RORY ERIC JURMAN
        FBN.: 194646
        Email: rjurman@hinshawlaw.com

        VIVIANA A. LOSHAK, ESQ.
        FBN.: 84869
        Email: vloshak@hinshawlaw.com

        *Attorneys for Starstone*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                    *s/ Viviana A. Loshak*
                    Viviana A. Loshak

303937488v2 1020617

## SERVICE LIST

### CASE NO. 6:18-cv-1048-ORL-31-TBS

Scott Busby, Esq,
Busby, Negin Attorneys at Law
8200 Roberts Drive
Suite 201
Atlanta, GA 30350
E-Mail: busby@busbynegin.com
Telephone: (470) 275-3042
*Counsel for Andrew James Bickford*

Todd R. Falzone, Esq.
Karina D. Rodrigues, Esq.
Kelley Uustal, PLC
Kelley Uustal Courthouse Law Plaza
700 SE 3rd Avenue, Suite 300
Fort Lauderdale, FL 33316
E-Mail: trf@kulegal.com; kdr@kulegal.com
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
*Counsel for Andrew Bickford*

Mark A. Nation, Esq.
Gregory D. Smartwood, Esq.
The Nation Law Firm
570 Crown Oak Centre Drive
Longwood, FL 32750
E-Mail: mnation@nationlaw.com;
gsmartwood@nationlaw.com
Telephone: (407) 337-1104
Facsimile: (407) 339-1118
*Attorney for Polynesian Inn, LLC DBA Days Inn of Kissimmee*

303937488v2 1020617