# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

STARSTONE NATIONAL INSURANCE
COMPANY,

        Plaintiff,

v.

                                   CASE NO.:   6:18-cv-01048-GAP-EJK

POLYNESIAN INN, LLC d/b/a DAYS INN
OF KISSIMMEE; ANDREW JAMES
BICKFORD; and JANE DOE, as Personal
Representative of the Estate of ZACKERY
RYAN GANOE,

        Defendants.

## PLAINTIFF, STARSTONE NATIONAL INSURANCE COMPANY'S, RESPONSE AND OPPOSITION TO DEFENDANT, POLYNESIAN INN, LLC d/b/a DAYS INN OF KISSIMMEE'S, MOTION FOR SUMMARY JUDGMENT

Plaintiff, STARSTONE NATIONAL INSURANCE COMPANY ("Starstone") through its undersigned counsel, pursuant to Fed. R. Civ. P. 56, M.D. Local Rule 3.01, this Court's Scheduling Order [D.E. 24], and this Court's Order dated July 3, 2019 [D.E. 82], hereby files its Response and Opposition to DEFENDANT POLYNESIAN INN, LLC D/B/A DAYS INN OF KISSIMMEE'S ("Polynesian"), Motion for Summary Judgment [D.E. 80] and states:

### INTRODUCTION

Starstone issued an Excess Policy that generally follows form to an underlying Northfield Policy.  The Northfield Policy provides Commercial General Liability ("CGL") coverage that is subject to a $1,000,000 per occurrence limit and a $2,000,000 aggregate.  Significantly, however, the Starstone Excess Policy does not follow the underlying Northfield Policy, or provide coverage for, any *sub*limit of liability in the Northfield Policy unless it is specifically endorsed to

the Starstone policy. Additionally, the Starstone policy's insuring agreement expressly states that it only provides coverage in excess of the limits set forth in Item 6.

It is undisputed that the "Limited Assault and Battery Coverage" Endorsement (the "A&B Endorsement) in the Northfield Policy incorporates a limit of $25,000 for "assault and battery offenses" that would otherwise be covered under the CGL Coverage Part. It is also undisputed that no premium was charged for the A&B Endorsement. Finally, it is undisputed that the A&B Endorsement is not specifically endorsed to and not shown on Item 6 of the Starstone Policy.

In the present case, the underlying claims arising out of the murder of Zackery Ganoe and attempted murder of Defendant ANDREW JAMES BICKFORD ("Bickford") fall squarely within the A&B Endorsement, and are therefore subject to the applicable sublimit of liability provided thereunder.  As the Starstone Policy does not provide coverage for any sublimit of liability in the Northfield Policy that is not specifically endorsed to the Starstone Policy, the Starstone Policy does not provide coverage for Ganoe and Bickford's claims.

Polynesian argues that the A&B Endorsement "adds a new type of coverage." *See* Polynesian's Motion [D.E. 80] at 5.  This, however, is directly contrary to the plain language of the Policy and A&B Endorsement. The CGL Coverage Part, which the A&B Endorsement modifies, would already provide coverage for sums that Polynesian is legally obligated to pay as a result of "bodily injury," subject to the $1,000,000 per occurrence limit of liability in the absence of the Endorsement.  This is wholly uncontested and is admitted by Bickford and Polynesian, as specifically acknowledged by the Defendants' discovery responses. *See infra* at ¶12.  Rather than providing a "new type of coverage" as Polynesian suggests, the A&B Endorsement caps the carrier's exposure for, *inter alia*, "bodily injury" damages caused by "assault and battery offenses" to $25,000 per offense.  In other words, the A&B Endorsement

2

creates a subordinate and smaller limit for a specific type of risk – assault and battery offenses – that would otherwise be covered by and subject to the $1,000,000 limit that applies in the CGL Coverage Part. *See, e.g., Orient Overseas Assocs. v. XL Ins. Am., Inc.*, 2016 N.Y. Misc. LEXIS 2048 (N.Y. Sup. Ct. May 11, 2016) ("The very concept of a sublimit is to cap a carrier's exposure at an amount below the policy limit if a particular type of covered peril caused the loss."). The A&B Endorsement places a limit on coverage for perils associated with assaults and batteries under the Northfield Policy, instead of providing new, additional coverage for that type of loss, thereby making it a sublimit. To be sure, no premium was charged for the A&B Endorsement.

Additionally, because the A&B Endorsement is not "shown" on Item 6, the Starstone Policy does not provide excess coverage to such limits, sublimit or otherwise.

Based on the undisputed facts, Polynesian's Motion for Summary Judgment is properly denied, and Starstone's Motion for Summary Judgment [D.E. 81] is properly granted.

## RESPONSE TO POLYNESIAN'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Polynesian argues in its "Statement of Facts" that the A&B Endorsement "adds a new type of coverage." [D.E. 80] at 5. Polynesian further states the A&B Endorsement "includes a limit for the new assault or battery coverage." *Id.* These are legal arguments, couched in Polynesian's Motion as purported "facts," and should be disregarded. *See Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, 2012 U.S. Dist. LEXIS 61710, at *9 n.8 (S.D. Fla. May 2, 2012) ("It is inappropriate to raise legal argument in a statement of material fact.").

2.      Polynesian avers that "Ganoe's estate has not made a claim against Polynesian but its interest is the same as Bickford's in this litigation." [D.E. 80] at 4. In support, the affidavit Wasim Ahmar, M.D., the managing member of Polynesian, was filed. *See* Ahmar Aff. [D.E. 80-1] at p. 3, ¶13 (attesting that "Ganoe's estate has not made a claim against Polynesian."). To the

3

contrary, Ganoe's Estate has made a claim against Polynesian. In fact, the Estate settled with Polynesian for the applicable limit for assault and battery offenses of $25,000 in acknowledgment and agreement that the Starstone policy does not provide coverage for the subject loss. *See* Ganoe Release [D.E. 80-10]. Polynesian's statement that the Estate of Ganoe's interest in this litigation is the same as Bickford is not only false given the factual fallacy it is premised on, but again, is a legal argument. *See Barnett*, 2012 U.S. Dist. LEXIS 61710, at *9 n.8.

3.      Polynesian states Bickford made a claim for damages against it that "was submitted by Polynesian *and/or* Bickford to Northfield and StarStone pursuant to the terms of the Northfield Policy and the StarStone Policy." *See* Polynesian's Motion [D.E. 80] at 4. This is an improper legal conclusion, as there are no facts alleged indicating how the claim was submitted. Instead, Polynesian simply makes the legal argument that, however the claim was submitted and irrespective of who submitted it, it was proper. This legal argument should be disregarded. *See Barnett*, 2012 U.S. Dist. LEXIS 61710, at *9 n.8.

## STARSTONE'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

### The Subject Incident

4.      On the night/early morning in question, Bickford and Ganoe rented a room together at Polynesian's Days Inn hotel. *See* Bickford Dep. Tr. [D.E. 81-3] at 12; *see also* Bickford's Deposition Transcript in full page format attached heretofore as ***Exhibit "A"***[1] at 44:24-45:10; Bickford Demand [D.E. 81-1] at 2; Polynesian's Interrogatory Answers ("Polynesian's ROG Answers") [D.E. 81-6] at 3-4.

---

[1] Given the Court's preference of full page deposition transcripts, *see* [D.E. 82] at 2, Starstone has attached Bickford's deposition transcript in full page format.

5.     Bickford and Ganoe, whom Bickford testified was a known drug dealer, spent the night listening to music, drinking beer, and using cocaine. *See* [D.E. 81-3] at 9, 13-14; *see also* ***Ex. "A"*** at 32:2-14, 45:13-48:10, 51:21-23.  Bickford testified he was drunk and high on cocaine on the night in question. *See* [D.E. 81-3] at 12-13; *see also* ***Ex. "A"*** at 45:10-46:1, 48:8-10.

6.     Emerita Mapp was invited to the hotel room on the night/early morning in question. *See* [D.E. 81-3] at 13-14; *see also* ***Ex. "A"*** at 48:12-49:15, 49:25-50:10. During her visit, Ms. Mapp stabbed Bickford in the throat. *See* Bickford Dep. Tr. [D.E. 81-3] at 16-17; ***Ex. "A"*** at 60:15-62:21; *see also* Bickford Demand [D.E. 81-1] at p. 2; Polynesian's ROG Answers [D.E. 81-6] at pp. 3-4.  Bickford did not consent to the stabbing. *See* Bickford Dep. Tr. [D.E. 81-3] at 18; ***Ex. "A,"*** at 67:18-20. Bickford sustained personal injuries as a result. *See* Bickford Dep. Tr. [D.E. 81-3] at 18; ***Ex. "A,"*** at 67:13-68:10; Bickford's Demand [D.E. 81-1] at 2.

7.     Ms. Mapp killed Mr. Ganoe. *See* Bickford Dep. Tr. [D.E. 81-3] at 16; ***Ex. "A,"*** at 61:2-24; *see also* Bickford Demand [D.E. 81-1] at 2.

## The Northfield Policy

8.     The Declarations Page to the primary Northfield Commercial General Liability Policy, No. WS215327, states that the Policy consists of Commercial General Liability Coverage Part ("CGL Coverage Part"). *See* Northfield Policy [80-1] at 6 (NFP-003).[2]

---

[2] The Northfield Policy has been filed numerous times. *See*, *e.g.,* Certified Copy of Northfield Policy attached to Complaint [D.E. 1-2] and Northfield's Insurance Disclosure pursuant to Fla. Stat. §627.4137 [D.E. 81-8]. Additionally, Polynesian attached the Northfield Policy twice to its Motion for Summary Judgment. *See* [D.E. 80-1] at pp. 4-93; [D.E. 80-3]. We will cite to the Northfield policy set forth in [D.E. 80-1] beginning at page 4 and, for the Court's convenience, will cite to *both* the record page numbers and the bate-stamped numbers.

304109762v2 1020617

304109762v2 1020617

9.     The CGL Coverage Part contains an Each Occurrence limit of $1 million per occurrence, a Personal and Advertising Injury limit of $1 million, and a General Aggregate limit of $2 million. *See id*. at 22 (NFP-019).

10.    The Northfield Policy contained the A&B Endorsement, which "modifies" the insurance provided under the CGL Coverage Part, to wit:

**LIMITED ASSAULT OR BATTERY LIABILITY COVERAGE**

\*      \*      \*      \*

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

\*      \*      \*      \*

*See id.* at 72 (NFP-069).

11.    The A&B Endorsement "applies to 'bodily injury', 'property damage' or 'personal and advertising injury' caused by an 'assault or battery offense'. . ." *See id*. at 73 (NFP-070). Per the endorsement, "assault and battery offenses" are limited to $25,000 per offense. *Id*. at 72 (NFP-069).

12.    Absent the A&B Endorsement, coverage for assault and battery offenses resulting in personal injuries would be provided under the Each Occurrence limit of $1 million and the Defendants have admitted as such. *See id*. at 24-28 (NFP-021-025); Polynesian's ROG Answers [D.E. 81-6] at 11 ("Prior to endorsement, the Northfield Policy provided coverage for assault and battery under Coverage A: Bodily Injury and Property Damage Liability."); Bickford's interrogatory answers ("Bickford's ROG Answers") attached heretofore as ***Exhibit "B"*** at No. 8 (same statement); Polynesian's Responses to Requests for Admissions ("Polynesian's RFA Resp.") [D.E. 81-5] at p. 6 (admitting that "prior to endorsement, the Northfield Policy provided

6

coverage for assault and battery under Coverage A. . . . [which is] limited to the Each Occurrence Limit ($1,000,000.00)."); Bickford Responses to Requests for Admissions ("Bickford's RFA Resp.") [D.E. 81-2] at pp. 5-6 (same admission).

13.     **No additional premium was charged for the A&B Endorsement**. *See id.* at 22 (NFP-019) (emphasis added). Rather, the "Commercial General Liability Coverage Part Declarations" states that the premium was "included." *See id.* Specifically, it provides:

| PREMIUM | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loc. # | Classification | Code No. | Premium Base | Rate Pr/CO | All Other | Advance Premium Pr/CO | | All Other |
| 001 | Motels and Hotels - with pools or beaches - less than four stories. - Products-completed operations are subject to General Aggregate Limit. | 45191 | s+ | 450,000 Included | 11.583 $ | Included | $ | ▮▮▮▮ |
| | Additional Insureds - | | t l Fully Earned | | 130.000 $ | | $ | ▮▮▮▮ |
| | Hired and Non-Owned Auto Liab | | | | $ | | $ | ▮▮▮▮ |
| | Limited Coverage - Assault or Battery | | | | $ | Included | $ | Included |
| | | | | Subline Premiums | $ | .00 | $ | ▮▮▮▮ |
| | | | | Total Advance Premium | | $ | ▮▮▮▮ | |

### The Starstone Policy

14.     The Starstone Excess Policy, No. 77238T160ALI, which follows form to the Northfield Policy, states in pertinent part:

> **SECTION I. – COVERAGE**
>
> A.     We will pay on behalf of the Insured the sums in excess of the Total Limits of Underlying Policies shown in **Item 6.** of the Declarations that the Insured becomes legally obligated to pay as damages.

*See* Starstone Policy [D.E. 80-4] at 5 (SSP-005).[3]

---

[3] Like the Northfield Policy, the Starstone Policy has been filed numerous times, including as a Complaint exhibit [D.E. 1-3], and in support of Starstone's Motion for Summary Judgment [D.E. 81-9]. Additionally, Polynesian has attached it twice in support of its Motion for Summary Judgment. *See* [D.E. 80-1] at 94; [D.E. 80-4]. For the Court's convenience, Starstone will cite to

15.     Item 6. in the Declarations of the Starstone Policy identifies the following limits:

ITEM 6          TOTAL LIMITS OF UNDERLYING POLICIES

$1,000,000          Per Occurrence

$2,000,000          Other Aggregate

Included in GL      Products/Completed Operations Aggregate

$1,000,000          Personal and Advertising Injury

$1,000,000          Combined Single Limit

*See id.* at 17 (SSP-016).

16.     Item 6 does not show the limits set forth in the A&B Endorsement. *See id.*

17.     The A&B Endorsement in the Northfield Policy and the limit set forth therein was not specifically endorsed to the Starstone Policy. *See id.* at 4 (SSP-004).

## **ARGUMENT**

### I.     **Contract Interpretation**

An insurance policy, like every contract,  is construed according to its plain language. If a policy provision is clear and unambiguous, the court cannot indulge in construction or interpretation of its plain meaning, and should simply enforce it according to its terms, whether it is a basic insuring clause or an exclusionary provision. *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985); *see also Allstate Ins. Co. v. Shofner*, 573 So. 2d 47, 49 (Fla. 1st DCA 1990). In other words, in the absence of ambiguity, courts are not permitted to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the manifest intention of the parties. *Shofner*, 573 So. 2d at 49. **Importantly, a provision is not ambiguous**

---

[D.E. 80-4] when citing to the Starstone Policy and will cite to *both* the record and Polynesian's bate-stamping.

304109762v2 1020617

304109762v2 1020617

**simply because it is complex or requires analysis.** *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (emphasis added). Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the policy construed in favor of the insured. *State Farm Fire & Cas. Co. v. CTC Dev.,* 720 So. 2d 1072, 1076 (Fla. 1998).

## II.      Definition of Sublimit

Instead of defining the word "sublimit," which is readily available in case law and insurance glossaries as discussed below, Polynesian argues the word "sublimit" is the word "limit" modified by the prefix "sub," which means "under," "below," or "beneath," per Merriam Webster's online dictionary. *See* [D.E. 80] at 9-10. Polynesian claims the A&B Endorsement must be "subordinate" to another limit. *See id*. Notably, Merriam Webster also defines "sub" as a "division or smaller part of," but Polynesian fails to utilize this definition. *See* Merriam Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/sub (last visited July 29, 2019). Thus, Polynesian claims Merriam Webster should be utilized to define "sub," but urges the Court to only adopt *some* of the definitions therein; to wit, the definitions it believes further its argument. Even still, assuming this is a proper way to define the word "sublimit," the A&B Endorsement is both subordinate to *and* a division or smaller part of the Each Occurrence and Personal and Advertising Injury limit.

The CGL Coverage part contains Coverage A, which provides an Each Occurrence limit of $1 million dollars limits for "bodily injury" or "property damage." *See* Northfield Policy [D.E. 80-1] at 22, 24 (NFP-019, 021). It also contains Coverage B, which provides a Personal and Advertising Injury limit of $1 million for "personal and advertising injury." *Id.* at 22, 28 (NFP-019, 025). The A&B Endorsement limits coverage for "bodily injury," "property damage" and "personal and advertising injury" arising from "assault and battery offenses" *that would normally*

be subject to a *$1 million limit[4]* to $25,000 per offense. Clearly, the $25,000 limit for assault and battery offenses is subordinate to *and* a division or smaller part of the higher limits for Each Occurrence and Personal and Advertising Injury that would otherwise be applicable.

Importantly, the term "sublimit" is an insurance term, which is more appropriately defined by insurance glossaries, as acknowledged by courts. *See, e.g., Formosa Plastics Corp., U.S.A. v. Ace American Insurance Co.*, 2010 WL 4687835 at *7 (D.N.J. Nov. 9, 2010) (utilizing Insurance Risk Management glossary for the definition of "sublimit"). Polynesian's failure to address the readily ascertainable definition of "sublimit" is quite telling. The International Risk Management Institute defines "sublimit" as "a limitation in an insurance policy on the amount of coverage available to cover a specific type of loss. A sublimit is a part of, rather than in addition to, the limit that would otherwise apply to the loss. **In other words, it places a maximum on the amount available to pay that <u>type</u> of loss,** rather than providing additional coverage for that type of loss." IRMI Online, Glossary of Insurance Risk Management Terms, http://www.irmi.com/online/insurance-glossary/terms/s/sublimit.aspx (emphasis added) (last visited July 29, 2019); *Formosa Plastics Corp.,* 2010 WL 4687835 at *7; *see also Philadelphia Indemnity Ins. Co. v. Baby Fold, Inc.*, 2018 WL 4616353 at *8 (N.D. Ill. 2018) (concluding that $250,000 limit in an endorsement tilted Sexual or Physical Abuse or Molestation Liability Coverage Form Sublimit was, in fact, a "sublimit" because it was included within, and was not excess of, nor in addition to the Limits of Insurance stated in the Declarations). "The very concept of a sublimit is to cap a carrier's exposure at an amount below the policy limit if a

---

[4] If the damage is "bodily injury" or "property damage," the applicable limit would be the Each Occurrence limit of $1 million. *See* Northfield Policy [D.E. 80-1] at 22, 24 (NFP-019, 021). If the damage is "personal and advertising injury," then the applicable limit is the Personal and Advertising Injury limit of $1 million. *See id.* at 22, 28 (NFP-019, 025).

particular type of covered peril caused the loss." *Orient Overseas Assocs. v. XL Ins. Am., Inc.*, 2016 NY Slip Op 31009(U), ¶ 16, 2016 N.Y. Misc. LEXIS 2048 (N.Y. Sup. Ct. May 11, 2016).

There would be coverage for an "assault and battery offenses" under the Each Occurrence limit of $1 million dollars if they resulted in "bodily injury" or "property damage," or the Personal and Advertising limit of $1 million dollars if they resulted in "personal and advertising injury" in the absence of the A&B Endorsement. **Polynesian and Bickford have specifically admitted to and acknowledged the same**. *See supra* at ¶12 (emphasis added). It cannot be said that the A&B Endorsement provides "new" or "additional" coverage for "assault and battery offenses" as they were covered under the policy prior to endorsement. Instead, the A&B Endorsement caps the carrier's exposure for "assault and battery offenses" by providing a smaller and subordinate sublimit of $25,000 per offense for such claims. Stated differently, the A&B Endorsement provides limited and smaller coverage for specific losses/perils, *i.e.* assault and battery offenses, that would otherwise be subject to the $1,000,000 limit that applies in the CGL Coverage Part. Indeed, Polynesian concedes the A&B Endorsement limits the risk for assault and battery offenses. *See* Polynesian's Motion [DE 80] at 10 (acknowledging the A&B limit is **"simply the 'limit' for a particular risk. That is the case here."**) (emphasis added). The A&B Endorsement therefore provides a sublimit.

As discussed in Starstone's motion for summary judgment [D.E. 81], in *Century Sur. Co. v. Seductions, LLC*, decided by the Eleventh Circuit, claims ensued against an insured nightclub, Seductions, by a patron when the nightclub's employees allegedly beat and threw a patron out of the nightclub for refusing to leave. 349 Fed. Appx. 455, 456, 2009 U.S. App. LEXIS 22783, *3 (11th Cir. 2009). Seductions was insured with Century Surety Co. ("Century") under a liability policy with Each Occurrence limits of $1 million. *See id.* The policy contained two pertinent

11

endorsements - forms CGL 1704 and CGL 1717.  *See id.* CGL 1704 explicitly excluded coverage for assault and battery claims.  *Id.* "CGL 1717 provided that '[t]he specific coverage excluded under CGL 1704 is reinstated on a limited basis' and purported to establish a $25,000 per occurrence sublimit for 'covered loss arising from an assault and battery.'" *Id.*

In construing CGL 1717, the Court noted it provided a **sublimit** of liability of $25,000 with respect to assault and battery losses. *See id.* (emphasis added).  Notably, absent endorsement CGL 1717, the policy did not provide coverage for assault and battery claims (by virtue of endorsement CGL 1704). *See id* at 456. CGL 1717 added coverage not otherwise available and the Court *still* found the same to be a sublimit as it was a smaller part of the higher limits. *See id.* In the present case, it is much clearer in that the A&B Endorsement is undeniably a sublimit because, as discussed above, absent the A&B Endorsement, there **is** coverage for assault and battery offenses for $1 million Each Occurrence. The A&B Endorsement merely limits the coverage available to assault and battery perils to $25,000 per offense.

### III.   The "Rules" Relied on by Polynesian do not Govern Whether the A&B Endorsement Contains a Sublimit

Without any support, Polynesian argues the Northfield policy provides "rules" that establish a "'sublimit' relationship." *See* [DE 80] at 13. The policy says nothing of the sort and Polynesian does not (and cannot) provide any support this contention. As an initial matter, these so-called "rules" are not appropriately reproduced, as Polynesian admits. *See* [DE 80] at 14 n.15 (admitting that, in its purported "reproduction" of the "rules," it selected the order of placing certain provisions relating to the A&B Endorsement).

The crux of Polynesian's argument is that, in the section titled Section III – Limits of Insurance, the A&B Endorsement does not specifically indicate it is "subject to paragraph 5,"

12

which it argues is the Each Occurrence limit. *See* [DE 80] at 14.  However, <u>this is not the test</u> set out by courts, as discussed above, and Polynesian has failed to support this contention.[5] A sublimit is determined by whether it limits a carrier's risk for a particular peril. *See supra* at §II. This is exactly what the A&B Endorsement does.

By way of visual example, the sublimit set forth in the A&B Endorsement operates as follows within Coverage A ("bodily injury" and "property damage" liability) and Coverage B ("personal and advertising injury" liability) in the CGL Coverage Part:

| Coverage A –<br><br>"Bodily Injury" and<br>"Property Damage"<br><br>$1,000,000 limit | "Bodily injury," "property damage," and "personal and advertising injury" caused "assault" or "battery"<br><br>$25,000 sublimit | Coverage B –<br><br>"Personal and Advertising Injury"<br><br>$1,000,000 limit |
|---|---|---|

Polynesian, however, argues the A&B Endorsement should be interpreted as follows:

| Coverage A –<br><br>"Bodily Injury" and<br>"Property Damage"<br><br><br><br>$1,000,000 limit | Coverage B –<br><br>"Personal and Advertising Injury"<br><br><br><br>$1,000,000 limit | A&B Endorsement<br><br>"Bodily injury," "property damage," and "personal and advertising injury" caused by "assault" or "battery"<br><br>$25,000 limit |
|---|---|---|

---

[5] Nonetheless, the A&B Endorsement cannot indicate it is subject only to the Each Occurrence limit applicable to "bodily injury" and "property damage" claims because it limits assault and battery offenses resulting in "personal and advertising injury" and is therefore also a sublimit to the Personal and Advertising Injury limit. *See* Northfield Policy [D.E. 80-1] at 72 (NFP-069).

13

The A&B Endorsement is not an additional or standalone coverage, and the sublimit of $25,000 could never apply in addition to the $1,000,000 limit as Polynesian's argument suggests. The visual depiction above shows the intimate relationship of the A&B endorsement sublimit to the Coverage A and Coverage B limits. Coverage A provides an Each Occurrence limit of $1 million for "bodily injury" and "property damage" claims. *See* Northfield Policy [D.E. 80-1] at  22, 24 (NFP-019, 021). Coverage B provides a Personal and Advertising Injury limit of $1 million for "personal and advertising injury." *Id*. at 22, 28 (NFP-019, 025). The A&B Endorsement's $25,000 sublimit is subordinate and a smaller part of the higher $1,000,000 limit provided for under Coverages A and B that applies only when "bodily injury," "property damage" or "personal and advertising injury" is caused by a specific risk/peril, *i.e.* "assault or battery offenses."

IV.     **Case Law Supports Starstone's Position**

i.     **Cases cited to by Polynesian are from foreign jurisdictions, otherwise inapposite, and supportive of *Starstone's* position**

Polynesian relies on *Lark v. W. Heritage Ins. Co.*, 64 F. Supp. 3d 802, 810-12 (W.D. Va. 2014), wherein a Virginia court held an assault and battery endorsement was a "separate" coverage. *See id.* First and foremost, Polynesian admits that, even if the A&B Endorsement is "separate," it does not mean it is not a sublimit. *See* [DE 80] at 20. Even if it did, the court in *Lark*, reached its conclusion because the assault and battery endorsement was "repeatedly limited to its own terms," and that coverage under the endorsement was provided "'*[f]or the [additional] premium shown.*'" *Id*. (emphasis added). The Court reasoned the insured "separately bargained" for the assault and battery coverage because of the additional premium charged. *See id.*

14

The A&B Endorsement expressly states it "*modifies* insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART."  *See* Northfield Policy [D.E. 80-1] at 72 (NFP-069).  It repeatedly refers back to the various sections of the CGL Coverage Part it modifies. *See id.* Specifically, the Endorsement modifies, deletes, adds, and replaces parts of the main CGL Coverage Part, such that it cannot be read or interpreted in isolation from the CGL Coverage Part.  *See id.*  For example, the A&B Endorsement adds exclusions to Paragraph 2., Exclusions, of Section I - Coverages - Coverage Bodily Injury and Property Damage Liability and Coverage B Personal and Advertising Injury Liability in the CGL Coverage Part.  *See id.* at 72 (NFP-069).  It further adds provisions to Section I – Coverages; Section II – Who Is An Insured; Section III – Limits of Insurance; and the Definitions Section of the CGL Coverage Part.  *See id.* The A&B Endorsement also refers to definitions found within the main CGL Coverage Part, including "bodily injury," "property damage", "personal and advertising injury," "coverage territory," "volunteer worker," "employee" and "suits." *See* id. at 72-75 (NFP-069-072).  The A&B Endorsement is not a standalone coverage, and cannot be interpreted without regard to the CGL Coverage Part that it modifies. Furthermore, unlike *Lark*, no additional premium was paid for the A&B Endorsement. *See id.* at 22 (NFP-019). The Northfield Policy Declarations clearly notes the A&B Endorsement is "Included," and not separate or additional.  *See id. Lark* is therefore inapposite to the undisputed facts here.

Polynesian also relies on *M.J.R. Corp. v. Scottsdale Ins. Co*., 803 S.W. 2d 426 (5d Tex. 1991), wherein a Texas court addressed whether a premises restriction applicable to property damage coverage also applied to commercial general liability coverage available under endorsement no. TXCMP-202. *See id*. at 430. The court ruled in the negative, holding the property damage and commercial general liability coverages were separate, and the premises-

15

restriction only applied to first party property damage coverage. *See id.*[6] Notably, the court squarely based its ruling on the fact that the liability coverage under TXCMP-202 was "issued in consideration of the payment of the premium. . ." *See id.*

We again note that a sublimit can indeed be separate, as Polynesian admits. *See* [DE 80] at 20. Regardless, in the present case, no additional premium was charged for the A&B endorsement such that it cannot be its own "new" or "additional" limit. *See infra,* at §IV(ii). Additionally, *MJR* is inapplicable as property damage coverage is undoubtedly a separate coverage from commercial general liability coverage. Property damage coverage insures against damage to an insured's property and such first party claims. *Jb Recycling Group v. Landmark Am. Ins.*, 2012 U.S. Dist. LEXIS 115042, *15-*16 (S.D. Fla. 2012). Commercial general liability insures against claims against an insured, *i.e.* third party liability claims. *See id.*

In actuality, *MJR* and *Lark* both support Starstone's position that the A&B Endorsement is a sublimit and not "new" or "additional" coverage as the A&B Endorsement limits the risk for a specific peril, continuously refers back to the CGL Coverage Part, modifying the same and utilizing the CGL Coverage Part's definitions and terms, and there was no additional premium charged for the A&B Endorsement.

ii.     **The A&B Endorsement is not a standalone coverage or contract, repeatedly refers back to the CGL Coverage Part, and no premium was charged**

As noted above, no premium was charged for the A&B Endorsement, which rebuts any doubts that such coverage is "new" or "additional." *See, e.g., State Nat'l Ins. Co. v. Lamberti,*

---

[6] The court stated "the specific references to "Geno's lounge" [the premises restriction] in the Scottsdale Insurance apply only to the policy's first-party property coverage, and not to the policy's TXCP-202 liability insurance endorsement." *Id.* at 430.

362 Fed. Appx. 76, 80, 2010 U.S. App. LEXIS 1455, *8 (11th Cir. 2010) (holding that a Police

Coverage endorsement was not standalone to a commercial general liability coverage because,

*inter alia*, "the first page of the Police Coverage form states that the 'Premium For This

Coverage' is 'Included.'"); *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc*., 420

F.3d 1317, 1323, 2005 U.S. App. LEXIS 17616, *8-9, 18 Fla. L. Weekly Fed. C 861 (11th Cir.

2005) (finding Sexual and Molestation Coverage was a separate coverage because the insured

paid a "separate premium"). *Geico Gen. Ins. Co. v. Schwinn*, 2006 U.S. Dist. LEXIS 34650,

2006 WL 1529092, at *17-18 (M.D. Fla. 2006) (holding that no additional UM coverage was

provided because there was no separate premium paid);[7] *Mitchell v. Modern Woodmen of Am*.,

2014 U.S. Dist. LEXIS 170695, *42, 2014 WL 6983293 (N.D. Ala. 2014) (noting that because

two coverages had "separate consideration—separate annual premiums—for each coverage,"

such coverages were distinct and additional from one another).

In *State Nat'l Ins. Co. v. Lamberti*, 362 Fed. Appx. 76, 80, 2010 U.S. App. LEXIS 1455,

*8 (11th Cir. 2010), the Eleventh Circuit determined that a Police Coverage endorsement was not

standalone or even separate coverage from a commercial liability insurance policy. The Court

reasoned that because the Police Coverage "[w]as an endorsement to the excess policy, [it was

not] separate coverage" and "nowhere does the policy state explicitly that the Police Coverage is

separate from the commercial general liability coverage." *Id.* The Court found the Police

Coverage Endorsement continuously referred back to the CGL coverage it modified, and could

---

[7] *See also Rando v. Gov't Emples. Ins. Co*., 556 F.3d 1173, 2009 U.S. App. LEXIS 2059,
21 Fla. L. Weekly Fed. C 1441 (11th Cir. 2009) (noting that if an insured pays separate
premiums, it is entitled to additional stacked UM coverage "based on the notion that the insured
should get what they paid for"); *Giddes v. Glens Falls Ins. Co*., 2003 U.S. Dist. LEXIS 25112,
*18, 17 Fla. L. Weekly Fed. D 445 (M.D. Fla. 2013) (same).

17

therefore not be standalone coverage. *Id*. at 81. The Court also based its holding due to the premium for the Police Coverage Endorsement being "included." *Id*. at 80. In the case at bar, the A&B Endorsement specifically indicates it modifies the CGL Coverage Part, continuously refers back to said Part's provisions, as discussed above, *see supra* at §IV(i), and the premium was "included." The A&B Endorsement simply cannot be "new" or "additional" coverage.

As set forth in Starstone's Motion for Summary Judgment, *see* [D.E. 80], which is incorporated in its entirety here, "[e]ndorsement[s] modif[y] and amend[] the insurance contract." *Allstate Fire & Cas. Ins. Co. v. Hradecky*, 208 So. 3d 184, 187, 2016 Fla. App. LEXIS 15904, *6, 41 Fla. L. Weekly D 2413; *see also Travelers Cas. & Sur. Case Co. v. Am. Int'l Surplus Lines Ins. Co*., 465 F. Supp. 2d 1005, 1025 (S.D. Cal. 2006) ("Endorsements are modifications to the basic insuring forms in the policy. . . "). "[A]n endorsement is an amendment to or modification of an existing policy of insurance." *Adams v. Explorer Ins. Co.*, 132 Cal. Rptr. 2d 24, 33 (Cal. Ct. App. 2003). "It is not a separate contract of insurance." *Id.* "Standing alone, an endorsement means nothing." *Id.* "[A]n endorsement is a part of the Policy, not a contract unto itself." *Great Am. Assur. Co. v. Sanchuk, LLC*, 2012 U.S. Dist. LEXIS 154003, *18-19, 2012 WL 5306354 (M.D. Fla. 2012) (emphasis added); *see also Kay-Lex Co. v. Essex Ins. Co*., 286 Ga. App. 484, 649 S.E.2d 602, 607 n.1 (Ga. App. 2007) ("Endorsements are not considered a part of the 'face of the policy.'"); *Fireman's Fund Ins. Co. v. CNA Ins. Co*., 177 Vt. 215, 862 A.2d 251, 258 (Vt. 2004) ("An endorsement is a writing added or attached to a policy which either expands or restricts the insurance in the policy.").

Thus, there is no question that the limit in the A&B Endorsement is a sublimit and not "new" or "additional" coverage.

304109762v2 1020617
304109762v2 1020617

### V.     It Is Undisputed The Starstone Policy Is Not Excess Over The A&B Sublimit Because It Is Not Shown In Item 6. of the Declarations

Additionally, there is no coverage for the subject incident in question by virtue of the insuring language of the Starstone Excess Policy, which provides, in relevant part:

> A.     We will pay on behalf of the Insured the sums in excess of the Total Limits of Underlying Policies shown in **Item 6.** of the Declarations that the Insured becomes legally obligated to pay as damages.

*See* Starstone Policy [D.E. 80-4] at 5 (SSP-005). Item 6 of the Declarations schedules the following Limits of the underlying Northfield Policy:

| ITEM 6 | TOTAL LIMITS OF UNDERLYING POLICIES |
|---|---|
| $1,000,000 | Per Occurrence |
| $2,000,000 | Other Aggregate |
| Included in GL | Products/Completed Operations Aggregate |
| $1,000,000 | Personal and Advertising Injury |
| $1,000,000 | Combined Single Limit |

*Id.* at 17 (SSP-016).  Noticeably absent from Item 6 in the Declarations is the underlying A&B [sub]limit of $25,000/$50,000 as required by Starstone's insuring agreement.  Under its plain and unambiguous language, the Starstone Policy is only excess to the total limits of the underlying policies shown in Item 6 of the Declarations. Accordingly, regardless of whether or not the $25,000/$50,000 limit in the A&B Endorsement is properly characterized as a sublimit or otherwise, the Starstone Policy still does not provide excess coverage.  Summary judgment in favor of Starstone is therefore proper as a matter of law.

19

## **CONCLUSION**

In sum, the A&B endorsement limits coverage for a particular risk, i.e. assault and battery offenses, that would otherwise be covered for $1 million under the CGL Coverage Part, but by virtue of the Endorsement, is limited to $25,000 per offense.  The A&B Endorsement provides a smaller and subordinate limit to Coverages A and B that would be available absent the Endorsement. The A&B Endorsement continuously refers back to the CGL Coverage Part that it modifies. Further, no additional premium was charged for the A&B Endorsement as same was "Included" such that it cannot be standalone, new, or additional coverage. Under every definition under the sun, the result is the same. The limit in the A&B Endorsement is a sublimit. Independently, irrespective of whether the limit at issue is a sublimit, Starstone's insuring agreement provides it only provides excess coverage to those limits "shown" in Item 6, which does not include the A&B Endorsement.

WHEREFORE, Plaintiff STARSTONE NATIONAL INSURANCE COMPANY respectfully requests this Court deny Defendant POLYNESIAN INN, LLC D/B/A DAYS INN OF KISSIMMEE'S Motion for Summary Judgment [D.E. 80], and grant Starstone's Motion for Summary Judgment [D.E. 81], along with all other relief this Court deems just and proper under the circumstances.

Dated: August 2, 2019

304109762v2 1020617

Respectfully submitted,

HINSHAW & CULBERTSON LLP
One East Broward Boulevard, Suite 1010
Fort Lauderdale, FL 33301
Telephone: 954-467-7900
Facsimile: 954-467-1024

By:    */s/Rory Eric Jurman*
     RORY ERIC JURMAN
     FBN.: 194646
     Email: rjurman@hinshawlaw.com

     VIVIANA A. LOSHAK, ESQ.
     FBN.: 84869
     Email: vloshak@hinshawlaw.com
     ***Attorneys for Starstone***

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

     */s/Viviana A. Loshak*
     Viviana A. Loshak

21

304109762v2 1020617

## <u>SERVICE LIST</u>

CASE NO. 6:18-cv-01048-GAP-EJK

Scott Busby, Esq,
Busby, Negin Attorneys at Law
8200 Roberts Drive
Suite 201
Atlanta, GA 30350
E-Mail: busby@busbynegin.com
Telephone: (470) 275-3042
***Counsel for Andrew James Bickford***

Todd R. Falzone, Esq.
Karina D. Rodrigues, Esq.
Kelley Uustal, PLC
Kelley Uustal Courthouse Law Plaza
700 SE 3rd Avenue, Suite 300
Fort Lauderdale, FL 33316
E-Mail: trf@kulegal.com; kdr@kulegal.com
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
***Counsel for Andrew Bickford***

Mark A. Nation, Esq.
Gregory D. Smartwood, Esq.
The Nation Law Firm
570 Crown Oak Centre Drive
Longwood, FL 32750
E-Mail: mnation@nationlaw.com;
gsmartwood@nationlaw.com
Telephone: (407) 337-1104
Facsimile: (407) 339-1118
***Attorney for Polynesian Inn, LLC DBA Days Inn of Kissimmee***

304109762v2 1020617

304109762v2 1020617