**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

STARSTONE NATIONAL INSURANCE COMPANY,

    Plaintiff,

v.

POLYNESIAN INN, LLC d/b/a DAYS INN OF KISSIMMEE; ANDREW JAMES BICKFORD; and JANE DOE, as Personal Representative of the Estate of ZACKERY RYAN GANOE,

    Defendants.

CASE NO.: 6:18-cv-01048-GAP-EJK

**REPLY OF PLAINTIFF, STARSTONE NATIONAL INSURANCE COMPANY, TO DEFENDANT POLYNESIAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, STARSTONE NATIONAL INSURANCE COMPANY ("Starstone" or "Plaintiff") through its undersigned counsel, pursuant to Fed. R. Civ. P. 56, M.D. Local Rule 3.01, this Court's Orders [D.E. 24] and [D.E. 82], hereby files its Reply to Defendant POLYNESIAN INN, LLC D/B/A DAYS INN OF KISSIMMEE'S ("Polynesian") Response in Opposition to Plaintiff's Motion for Summary Judgment [D.E. 92], and in support thereof states:

**INTRODUCTION**

The instant matter arises out of the murder of Zackery Ganoe and the attempted murder and bodily injuries of Defendant ANDREW BICKFORD ("Bickford") that occurred at the Polynesian-owned Days Inn of Kissimee. Bickford made a claim for bodily injuries against Polynesian. Defendant THE ESTATE OF ZACKERY RYAN GANOE ("Estate of Ganoe") made a claim against Polynesian for wrongful death, which has been settled for the Assault & Battery limits of $25,000 per offense of the underlying primary policy, acknowledging the

304188217v1 1020617

Starstone policy does not provide coverage. Starstone filed the instant coverage action, and Starstone and Polynesian have each filed summary judgment motions [D.E. 81 & 80], and respective opposition briefs. [D.E. 93 & 92].

The parties agree the subject incident arises out of an "assault or battery," and thus, the "Limited Assault or Battery Liability Coverage" endorsement ("A&B Endorsement") and its $25,000 per offense limit is applicable. The parties also agree the A&B Endorsement is not specifically endorsed to the Starstone Policy. The parties dispute whether the $25,000 limit applicable for "assault or battery offenses" causing "bodily injury," "property damage," or "personal and advertising injury" is a sublimit of liability such that the Starstone policy does not provide excess coverage. As noted below, case law and insurance glossaries define "sublimit," making clear the A&B Endorsement limits a carrier's risk for a specific peril, *i.e.* assault or battery offenses. Polynesian sets forth self-proclaimed "rules" governing whether a limit is a sublimit, but Polynesian <u>does not and cannot cite to any authority</u> in support of its novel legal theories. Additionally, the Endorsement is a sublimit and not standalone coverage as it repeatedly refers back to the CGL Coverage Part it modifies, and no additional premium was charged.

Further, the parties agree the Starstone policy only provides excess coverage to those limits "shown in Item 6" of Starstone's Declarations and the A&B Endorsement is not "shown" thereunder. Polynesian, however, claims it was not sufficiently put on notice of this, and Starstone is estopped from enforcing this unequivocal language. Polynesian has an obligation to read its policy and it is no defense that it has not done so. Polynesian attempts to create coverage by estoppel, which runs contrary to Florida law. Nevertheless, no heightened pleading is required and the complaint sufficiently provides Polynesian notice, as discussed below.

## ARGUMENT

### I. The A&B Endorsement is a Sublimit

2

First and foremost, Starstone adopts the arguments and authority set forth in its Response and Opposition to Polynesian's motion for summary judgment. *See* [D.E. 93].[1] In its Motion for Summary Judgment [D.E. 81], and its Response and Opposition to Polynesian's summary judgment motion [D.E. 93], Starstone provided ample support and authority regarding its position as to why the A&B Endorsement provides a sublimit of liability.

Polynesian mischaracterizes Starstone's position, claiming Starstone argues the A&B Endorsement provides a sublimit merely "because it is less" than the Each Occurrence limit of $1,000,000 that applies to "bodily injury" claims. [D.E. 92] at 4, 6. That is not so. Starstone does not contend *any* limit less than $1,000,000 is a sublimit of the Each Occurrence or Personal and Advertising Injury limit. Instead, Starstone correctly notes that, according to case law and insurance glossaries, a sublimit limits the carrier's risk for a specific peril. "The very concept of a sublimit is to cap a carrier's exposure at an amount below the policy limit if a particular type of covered peril caused the loss." *Orient Overseas Assocs. v. XL Ins.*, 2016 NY Slip Op 31009(U), ¶ 16, 2016 N.Y. Misc. LEXIS 2048 (N.Y. Sup. Ct. 2016). In the present case, the "particular type of covered peril that caused the loss" is an assault or battery offense.

As Polynesian correctly notes, **"without the A&B Coverage Endorsement the Northfield Policy would cover assault or battery under Coverage A which would be subject to the $1,000,000 Each Occurrence Limit."** [D.E. 92] at 5.[2] The A&B Endorsement limits coverage for the specific peril of assault or battery offenses to $25,000 per offense.

---

[1] Polynesian did the same in its opposition brief. *See* [D.E. 92] at 3 ("Polynesian hereby adopts the arguments and authority set forth in its Motion for Summary Judgment.").

[2] This is the position taken by all defendants. *See* Polynesian's interrogatory answers [D.E. 81-6] at 11 ("Prior to endorsement, the Northfield Policy provided coverage for assault and battery under Coverage A: Bodily Injury and Property Damage Liability."); Bickford's interrogatory answers [D.E. 93-2] at 5-6 (same statement); Polynesian's Responses to Requests

3

Polynesian takes issue with the exclusion contained in the A&B Endorsement. However, the exclusion in the A&B Endorsement operates to ensure the A&B Endorsement *limits* coverage for assault and battery perils as opposed to enlarging coverage. As admitted by Polynesian and Bickford, *see* [D.E. 92] at 5 and *supra* at n. 3, in the absence of the endorsement at issue, assault or battery offenses that result in bodily injuries are covered under the Each Occurrence limit of $1,000,000.[3] The A&B Endorsement, however, provides a $25,000 limit for specific perils, i.e assault or battery offenses resulting in "bodily injury," "property damage," or "personal and advertising injury." In so doing, the A&B Endorsement excludes assault and batteries from the CGL Coverage Part to make clear that a claimant is <u>not</u> entitled to <u>both</u> a $1,000,000 limit <u>and</u> the $25,000 sublimit. If the A&B Endorsement did not exclude assault and battery offenses from the Each Occurrence and Personal and Advertising Injury limits of $1,000,000, then a claimant would be getting $1,000,000 *in addition to* the A&B sublimit of $25,000. In that instance, the A&B Endorsement would be providing greater coverage for the specific peril of assault and battery offenses as opposed to limiting coverage therefor.

In the *Seductions* case discussed in Starstone's Motion for Summary Judgment, *see* [D.E. 81] at 19-20, the Eleventh Circuit found an endorsement, no. CGL 1717, which provided a $25,000 limit for assault and battery claims, was a sublimit. *See Century Sur. Co. v. Seductions, LLC*, 349 Fed. Appx. 455, 456 (11th Cir. 2009). This is so, even though, absent endorsement CGL 1717, assault and battery offenses were excluded by virtue of another endorsement. *See id.*

---

for Admissions [D.E. 81-5] at p. 6 (admitting that "prior to endorsement, the Northfield Policy provided coverage for assault and battery under Coverage A. . . . [which is] limited to the Each Occurrence Limit ($1,000,000.00)."); Bickford Responses to Requests for Admissions [D.E. 81-2] at pp. 5-6 (same admission).

[3] In the absence of the A&B Endorsement, assault or battery offenses resulting in *personal and advertising injury* are covered under the Personal and Advertising Injury limit of $1,000,000. *See* Northfield Policy [80-1] at 22, 28 (NFP-019, 025).

4

at 456. The present case provides a much clearer example of a sublimit because, absent the A&B Endorsement, there **is** coverage available for assault or battery offenses for $1,000,000, and the A&B Endorsement limits coverage therefor to $25,000 per offense.

Polynesian also claims Starstone "concede[s]" the A&B Endorsement is not subject to the Each Occurrence limit. *See* [D.E. 92] at 5. Polynesian disingenuously distorts Starstone's statement, taking it out of context. Specifically, Polynesian claims Starstone stated as follows:

> [t]he A&B Endorsement does this [caps the carrier's exposure for assault and battery offenses to $25,000.00 per offense] by excluding such offenses under Coverage A to make clear that such offenses are **not** subject to the $1 million Each Occurrence limit. . .

*Id*. Starstone's actual text was:

> [t]he A&B Endorsement does this this [caps the carrier's exposure for assault and battery offenses to $25,000.00 per offense] by excluding such offenses under Coverage A to make clear that such offenses are **not** subject to the $1 million Each Occurrence limit <u>as well as the A&B sublimit.</u>

[D.E. 81] at 18 (underlined emphasis added). The underlined portion of the text was omitted from Polynesian's purported reproduction. Starstone was not stating the A&B Endorsement is not subject to the Each Occurrence limit. Rather, Starstone stated the endorsement is not subject to the Each Occurrence limit *in addition to* (or "as well as") the A&B sublimit. Polynesian's argument is but a mere distraction from the issues at hand.

Contrary to Polynesian's arguments, it is clear the A&B Endorsement provides a sublimit, not "standalone," "new" or "additional" coverage. No premium was charged for the A&B Endorsement. *See, e.g., State Nat'l Ins. Co. v. Lamberti*, 362 Fed. Appx. 76, 80, 2010 U.S. App. LEXIS 1455, *8 (11th Cir. 2010) (holding that a Police Coverage endorsement was not standalone to a commercial general liability coverage because, *inter alia*, "the first page of the Police Coverage form states that the 'Premium For This Coverage' is 'Included.'"); *Guideone*

5

*Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc*., 420 F.3d 1317, 1323, 2005 U.S. App. LEXIS 17616, *8-9, 18 Fla. L. Weekly Fed. C 861 (11th Cir. 2005) (finding Sexual and Molestation Coverage was a separate coverage because the insured paid a "separate premium"); *see also* Starstone's Opposition brief [D.E. 93] at 16-18 (discussing additional case law).

Moreover, the A&B Endorsement continuously refers back to the CGL Coverage Part it modifies such that it cannot be standalone coverage. *See, e.g., Lamberti*, 362 Fed. Appx. at 80 (finding a police endorsement not to be additional or standalone coverage because it continuously referred back to the CGL coverage it modified). The A&B Endorsement expressly states it "*modifies* insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART" and repeatedly refers back to the various sections of the CGL Coverage Part it modifies. *See* Starstone's Opposition brief [D.E. 93] at 15-16 (detailing how the A&B Endorsement expressly refers back to various sections of the CGL Coverage Part).

## II.     <u>**Polynesian's Estoppel Argument Fails**</u>

Polynesian acknowledges both that the Starstone policy only provides excess coverage for limits "shown" in Item 6 of the Declarations, and that the A&B Endorsement limit is not "shown" thereunder. Notably, Polynesian does not (and cannot) counter Starstone's argument substantively because it is clear the A&B limit – sublimit or otherwise – is not "shown" in Item 6. Instead, Polynesian only argues that, because Starstone did not detail with specificity this argument in its Complaint, it is estopped from now asserting this argument. Polynesian's argument fails for multiple reasons.

Polynesian claims it was not sufficiently provided notice that there was no coverage under the Starstone policy because the A&B limits are not "shown" in Item 6. However, the insuring agreement of the Starstone plainly so states. Polynesian has an obligation to read its

6

304188217v1 1020617

policy and it is no defense that it has failed to do so. "If [an] insured failed to read the policy his dereliction cannot be charged to the insurance company." *Globe & Rutgers Fire Ins. v. Segler*, 44 So. 2d 658, 660 (Fla. 1950) (also noting that "[t]he insured is bound by the terms of the policy which he accepts"); *Allen v. United Servs. Auto. Ass'n*, 2014 U.S. Dist. LEXIS 43379 (N.D. Fla. 2014) (same); *Oretsky v. Infinity Ins.*, 524 F. App'x 517, 523 (11th Cir. 2013) ("failure to read . . . the policy is of no moment. . ."). "[A]n insured cannot avoid liability for a provision in an insurance [policy] he claims he did not read." *Citizens Prop. Ins. v. European Woodcraft & Mica Design*, 49 So. 3d 774, 777-78 (Fla. 4th DCA 2010); *Great Am. Assurance Co. v. Sanchuk, LLC*, 2012 U.S. Dist. LEXIS 154003, at *26 (M.D. Fla. 2012).

Irrespective of the above, Polynesian was sufficiently provided notice, and Starstone was not required to satisfy any heightened pleading standard as Polynesian argues. As reiterated time and time again, the Starstone policy does not provide excess coverage for claims covered under a sublimit of liability under the primary Northfield policy. Thus, the fact the A&B Endorsement limits are a sublimit is *why* such limits are not "shown" in Item 6 (*i.e.* because the Starstone policy, per its very terms, does not provide excess coverage for sublimits). While the A&B limits need not be sublimits to not be "shown" on the Declarations, in this particular instance, the *reason* the A&B limits are not "shown" is because it is a sublimit to which the Starstone policies does not provide excess coverage. Thus, Polynesian was sufficiently provided notice of this basis for disclaimer, by virtue of the complaint, denial letter, and the plain and ordinary language of Polynesian's policy that Polynesian was responsible for reading.

Polynesian cites to *Manning v. St. Petersburg Kennel Club, Inc.*, wherein Manning filed a lawsuit under the FLSA arguing that "she is entitled to receive the mandatory minimum wage" because her employer improperly pooled tips for certain employees. 2015 U.S. Dist. LEXIS

7

13897 (M.D. Fla. 2015). In her opposition papers to the employer's summary judgment motion, Manning additionally argued her employer unlawfully deducted tips from certain employees, herself included. *Id.* at *10. Manning sought return of these improper deductions. *See id.* The Court held the latter argument was improperly raised. *Id.* at *11. In so holding, the Court noted that Manning's first argument (seeking minimum wage because of an improper tip pool) did not sufficiently put the employer on notice as to the second argument (that Manning also sought the return of improper tip deductions). *Id*. The relief sought was entirely different. *Id.* Additionally, in answers to interrogatories asking "what is the nature of your claim?," Manning only addressed the improper tip pool issue wherein Manning sought payment of minimum wage, and did not address that she also sought the return of tip deductions. *See id.*

*Manning* is distinguishable and properly disregarded as the additional claim Manning asserted (improper deductions from employer) and the relief sought (return of deductions) had nothing to do with the original claim (improper tip pool) and the relief sought therefor (payment of minimum wage). Here, as noted above, the claims are keenly interrelated and the relief requested is the same – a declaration of no coverage. Additionally, Manning was asked to specify the nature of her claim in interrogatories and only discussed the improper tip pool. In the present case, Polynesian, at its own risk, failed to propound any discovery asking for a detail of Starstone's position, which is common practice. *See, e.g.,* Starstone's interrogatories to Polynesian, which are attached heretofore as **Exhibit "A,"** at no. 6 (asking Polynesian to "[d]escribe in detail the basis for [its] contention that the StarStone policy provides coverage for the Subject Incident."). All discovery Polynesian propounded to Starstone are attached and demonstrate that no such inquiry was made. *See* Polynesian's Requests for Admission,

8

Polynesian's First Request to Produce, and Polynesian's Second Request to Produce are attached heretofore, respectively, as **Exhibits "B," "C," and "D."**

Polynesian is attempting to create coverage by estoppel and waiver, which is contrary to Florida law. "The general rule under Florida law is that 'the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel.'" *Doe v. Allstate Ins. Co.*, 653 So.2d 371, 373 (Fla. 1995)[4] (internal quotations omitted); *Camden Fire Ins. Ass'n v. MDVIP, Inc.*, 2013 U.S. Dist. LEXIS 192521, at *8 (S.D. Fla. 2013). "[A] court cannot create coverage by equitable estoppel." *Burger King v. Lumbermens Mut. Cas.*, 410 F. Supp. 2d 1249, 1259 (S.D. Fla. 2005). "Under Florida law, the doctrine of waiver and estoppel is not available to bring within the coverage of the policy risks not covered by its terms." *Country Manors Asso. v. Master Antenna Sys.*, 534 So. 2d 1187, 1195 (Fla. 4th DCA 1988); *Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co.*, 268 So.2d 560, 564 (Fla. 4th DCA 1972), cert. discharged, 276 So.2d 37 (Fla. 1973); *Solar Time Limited v. XL Specialty Ins. Co.*, 142 Fed. Appx. 430, 434 (11th Cir. 2005) (affirming judgment of no coverage where the insurer issued a reservation of rights letter that specifically noted that it was not waiving any defenses or rights, even though it did not identify specific basis for denial despite having knowledge of facts to raise same). For Starstone to have waived its argument, there needs to be an "intentional relinquishment of a known right." *Moton v. Nat'l Motor Club*, 705 F. App'x 850 (11th Cir. 2017). The "intentional relinquishment" must be shown in an "unequivocal manner." *Id*. Polynesian has failed to make this requisite showing needed as Starstone has always maintained there is no coverage.

---

[4] *Doe* acknowledged an exception to this general rule where an insurer erroneously begins to defend an insured and the insured relies upon the insurer to the insured's detriment. *Doe*, 653 So.2d at 373. That is not the case here.

In any event, Polynesian has failed to establish (1) reasonable reliance on something other than plain policy language (2) to its detriment. Polynesian's argument that it "cannot conduct any discovery relevant to this theory" is a farce. Polynesian has acknowledged and recognized the Starstone policy attached to the complaint is a true and correct copy. *See* Polynesian's RFAs to Starstone, **Ex. "A"** at no. 4. Even more, Starstone has provided a certified copy of its policy. [D.E. 81-9]. The language of the Starstone policy plainly and clearly provides it only provides excess coverage for those limits "shown" in Item 6 and the A&B Endorsement is not so "shown." *See* [D.E. 80-4] at 5, 17 (SSP-005, 016). No facts obtained in the discovery process would have provided any discoverable information relevant to the interpretation of these provisions, <u>which are questions of law</u>. *Fayad v. Clarendon Nat'l Ins.*, 899 So. 2d 1082, 1085 (Fla. 2005); *U.S. Fire Ins. v. J.S.U.B.*, 979 So. 2d 871 (Fla. 2007) ("an issue of insurance policy construction. . . is a question of law. . ").

*Assuming arguendo* that this Honorable Court does not find this argument to be an independent basis for a disclaimer, at a minimum, the A&B Endorsement's limit not being "shown" on Item 6 supports that this limit is indeed a sublimit. Thus, Polynesian's estoppel and waiver arguments fail.

## CONCLUSION

WHEREFORE, Plaintiff STARSTONE NATIONAL INS. CO. respectfully request this Court grant it Motion for Summary Judgment, deny Polynesian's Motion for Summary Judgment, and for all such other relief this Court deems just and proper under the circumstances.

Dated: August 16, 2019

        Respectfully submitted,

        HINSHAW & CULBERTSON LLP
        One East Broward Boulevard, Suite 1010
        Fort Lauderdale, FL 33301
        Telephone: 954-467-7900
        Facsimile: 954-467-1024

By:    */s/Rory Eric Jurman*
        RORY ERIC JURMAN
        FBN.: 194646
        Email: rjurman@hinshawlaw.com

        VIVIANA A. LOSHAK, ESQ.
        FBN.: 84869
        Email: vloshak@hinshawlaw.com
        ***Attorneys for Starstone***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 16, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s Viviana A. Loshak
        Viviana A. Loshak

## SERVICE LIST

CASE NO. 6:18-cv-01048-GAP-EJK

Scott Busby, Esq,
Busby, Negin Attorneys at Law
8200 Roberts Drive
Suite 201
Atlanta, GA 30350
E-Mail: busby@busbynegin.com
Telephone: (470) 275-3042
***Counsel for Andrew James Bickford***

Todd R. Falzone, Esq.
Karina D. Rodrigues, Esq.
Kelley Uustal, PLC
Kelley Uustal Courthouse Law Plaza
700 SE 3rd Avenue, Suite 300
Fort Lauderdale, FL 33316
E-Mail: trf@kulegal.com; kdr@kulegal.com
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
***Counsel for Andrew Bickford***

Mark A. Nation, Esq.
Gregory D. Smartwood, Esq.
The Nation Law Firm
570 Crown Oak Centre Drive
Longwood, FL 32750
E-Mail: mnation@nationlaw.com;
gsmartwood@nationlaw.com
Telephone: (407) 337-1104
Facsimile: (407) 339-1118
***Attorney for Polynesian Inn, LLC DBA Days Inn of Kissimmee***