# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

STARSTONE NATIONAL INSURANCE
COMPANY,

           **Plaintiff,**

v.                                                              **Case No:   6:18-cv-1048-Orl-31EJK**

POLYNESIAN INN, LLC, ANDREW
JAMES BICKFORD and JANE DOE as
personal representative of the estate of
Zackery Ryan Ganoe,

           **Defendants.**

_____

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 80) filed by Defendant Polynesian Inn, LLC (henceforth, "Polynesian") and the Motion for Summary Judgment (Doc. 81) filed by the Plaintiff, Starstone National Insurance Company ("Starstone"), as well as the responses in opposition (Docs. 92, 93) and replies (Docs. 98, 100) thereto.

### I.     Background

The following facts are undisputed.   Polynesian operates a hotel in Kissimmee.   In April 2017, Zackery Ryan Ganoe ("Ganoe") and Defendant Andrew Bickford ("Bickford") were guests at that hotel.   While there, they were attacked by a third party who murdered Ganoe and attempted to murder Bickford.    Subsequently, Bickford made a claim for damages against Polynesian, alleging that it failed to provide adequate security.[1]

_____

[1] Though it remains a party, Ganoe's estate has not participated in this declaratory judgment action.   Accordingly, for the sake of simplicity, the remainder of this opinion will discuss only Bickford's claim.

At the time of the attack, Polynesian had two insurance policies: a Commercial General Liability ("CGL") policy issued by Northfield Insurance Company (the "Northfield Policy") and an Excess Liability Policy issued by Starstone (the "Starstone Policy").[2]   Generally, the Northfield Policy provides $1 million of liability coverage per occurrence, subject to a $2 million aggregate limit.   However, as discussed in more detail below, the Northfield Policy only provides $25,000 in coverage for a claim resulting from an assault or battery (henceforth, an "assault claim"), subject to a $50,000 aggregate limit.

The Starstone Policy is a "following form" policy, meaning that, with certain exceptions, it follows the definitions, terms, conditions, limitations, and exclusions of the followed policy – in this case, the Northfield Policy – and does not pay out until the limits of the followed policy have been exhausted.   But the Starstone Policy also states that it provides no coverage where the coverage in the followed policy is subject to a "sublimit of liability".

Polynesian and Starstone do not dispute that, for purposes of the Northfield Policy, Bickford's claim is subject to the $25,000 limit for assault claims.   In their dueling motions for summary judgment, however, those parties disagree as to what this means for purposes of the Starstone Policy.   Starstone contends that the $25,000 limit for assault claims is a "sublimit of liability," and therefore its policy does not provide coverage for assault claims – and, more particularly, for the claim arising from the assault on Bickford.   Polynesian contends that the lower assault and battery limit is a standalone limit, not a sublimit, and therefore the Starstone

---

[2] The policy was originally issued by Torus National Insurance Company, which subsequently changed its name to Starstone National Insurance.   (Doc. 81-9 at 1).

Policy provides coverage for any assault claims exceeding the $25,000 in coverage provided by the Northfield Policy.

## II.      Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56(c).   Which facts are material depends on the substantive law applicable to the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).   In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.   The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments.   *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."   *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.   Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.   *Id.*   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.

*Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### III.    Analysis

As touched on above, the Starstone Policy is a following form excess liability policy. (Doc. 80-1 at 95).   It has a $3 million limit of liability per occurrence.   (Doc. 80-1 at 95). Section I of the Starstone Policy, titled "Coverage," provides in pertinent that

> A.    We will pay on behalf of the Insured the sums in excess of the Total Limits of Underlying Policies shown in Item 6. of the Declarations that the Insured becomes legally obligated to pay as damages.
>
> B.    This Policy applies only to damages covered by the Followed Policy as shown in Item 7. of the Declarations. Except as otherwise provided by this Policy, the coverage follows the definitions, terms, conditions, limitations and exclusions of the Followed Policy in effect at the inception of this Policy.
>
> C.    This Policy applies only to damages arising out of any claim or of any occurrence likely to give rise to a claim, of which no Responsible Insured was aware prior to the Inception Date set forth in Item 2. of the Declarations, regardless of whether such Responsible Insured believed such claim or occurrence would involve this Policy.
>
> D.    Notwithstanding A., B. and C. above, in no event will this Policy follow the terms, conditions, exclusions or limitations in the Followed Policy or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the Followed Policy:
>
> > 1.    Liberalization clause;
> >
> > 2.    Crisis Management or Crisis Response endorsement; or
> >
> > 3.    **Sublimit of liability**, unless coverage for such sublimit is specifically endorsed to this Policy.[3]

---

[3] It is undisputed that there was no endorsement to the Starstone Policy for coverage in

- 4 -

(Doc. 80-1 at 98) (emphasis added).   An endorsement to the Starstone Policy identified the Northfield Policy as the "Followed Policy."   (Doc. 80-1 at 124).

The Northfield Policy generally provides $1 million in liability coverage per occurrence, with a $2 million aggregate limit.   (Doc. 80-1 at 22).   In its unmodified form, the policy provided coverage for, among other things, sums that Polynesian became liable to pay as damages because of "bodily injury."   (Doc. 80-1 at 24).   However, the Northfield Policy includes an endorsement (Doc. 80-1 at 72-75) entitled "Limited Assault or Battery Liability Coverage" (henceforth, the "A&B Endorsement"), which alters its coverage and limits.   In relevant part, the A&B Endorsement (1) adds an exclusion to the existing coverage provisions for "bodily injury" arising out of any "assault" or "battery" committed by any person[4] (Doc. 80-1 at 72); (2) adds a new coverage provision – titled "Coverage – Assault or Battery Liability" – for "bodily injury" caused by an "assault or battery offense" (Doc. 80-1 at 72-73); (3) establishes a "Schedule of Assault or Battery Limits" of $25,000 for each assault or battery offense, with a $50,000 aggregate limit (Doc. 80-1 at 72); and (4) alters the existing "Limits of Insurance" section of the Northfield Policy to provide that the amounts set forth in the "Schedule of Assault or Battery Limits" are the maximums that Northfield will pay for damages under the "Coverage – Assault or Battery Liability" provision.

The parties agree that the damages resulting from the attack on Bickford fall under this new "Coverage – Assault or Battery Liability" provision, and therefore coverage under the Northfield Policy for those damages is limited to $25,000.   They also agree that, were it not for

---

regard to assault claims.

[4] In other words, it eliminates the coverage otherwise provided by the policy for such "bodily injury."

the A&B Endorsement, those damages would have only been subject to the Northfield Policy's $1 million per-occurrence limit.   (Doc. 80 at 9).   But as noted above, they disagree as to whether the $25,000 limit is a "sublimit of liability" as that term is used in the Starstone Policy.

In diversity cases such as this one, the choice of law rules of the forum state determine which state's substantive law applies.   *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941).   Florida law provides that the laws of the place where the contract was made govern interpretation of the substantive issues regarding the contract.   *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir. 2004).   There is no dispute that the last act necessary to the formation of these contracts occurred in Florida, and therefore Florida law governs their interpretation.

Under Florida law, the construction of an insurance policy is a question of law to be determined by the court.   *Jones v. Utica Mut. Ins. Co*., 463 So.2d 1153, 1157 (Fla.1985). Insurance contacts are to be construed according to their plain language as bargained for by the parties.   *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).   Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.   *Id.*   But where the language of an insurance policy is plain and unambiguous, there is no need for judicial construction and the contract must be enforced as written.   *Fla. Power & Light Co. v. Penn Am. Ins. Co.*, 654 So. 2d 276, 278 (Fla. 4th DCA 1995) (citing *Great Global Assur. Co. v. Shoemaker*, 599 So. 2d 1036 (Fla. 4th DCA 1992)).   The policy terms must be given the plain and ordinary meaning as understood by the average person. *See Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997).

The Starstone Policy does not contain a definition of "sublimit" or "sublimit of liability".[5]   The parties also do not identify definitions of "sublimit" or "sublimit of liability" that can be found in general-purpose dictionaries.   Polynesian relies on the following definition of the prefix "sub-", found on the website dictionary.com:

> a prefix occurring originally in loanwords from Latin (*subject; subtract; subvert; subsidy*); on this model, freely attached to elements of any origin and used with the meaning "under," "below," "beneath" *(subalpine; substratum)*, "slightly," "imperfectly," "nearly" *(subcolumnar; subtropical)*, "secondary," "subordinate" *(subcommittee; subplot)*.

https://www.dictionary.com/browse/sub- retrieved April 26, 2019. (emphasis in original).[6]   More particularly, Polynesian relies on the first and last parts of that definition, arguing that for a limit to qualify as a "sublimit," it must be "subordinate to (or under) another limit.   Otherwise, the argument continues, that limit "is its own standalone limit."   (Doc. 80 at 10).   Polynesian then notes that, unlike a number of the other coverages in the Northfield Policy, the Limited Assault or Battery Liability Coverage is subject only to the policy's $2 million aggregate limit, not its $1 million per-occurrence limit.   (Doc. 80 at 15).   According to Polynesian, an aggregate limit is not a coverage limit, but the per-occurrence limit is.[7]   (Doc. 80 at 13).   Therefore, Polynesian concludes, the Limited Assault or Battery Liability Coverage, which is subject only to an aggregate limit, is **not** subject to a coverage limit, and it is therefore its own standalone limit.

Polynesian provides no support in case law or otherwise for its interpretation of "sublimit," or anything to suggest that the average person would interpret that word in this convoluted

---

[5] Nor, for that matter, does the Northfield Policy.

[6] In support, Polynesian also points to other uses of the prefix "sub-" within the Northfield Policy, such as references to "subparagraphs" and "sublessees".

[7] Polynesian does not explain why these limits should be placed into different categories.

fashion.   On the other hand, Starstone's proposed interpretation is that of the International Risk

Management Institute, which defines "sublimit," in pertinent part, as

> A limitation in an insurance policy on the amount of coverage
> available to cover a specific type of loss. A sublimit is part of, rather
> than in addition to, the limit that would otherwise apply to the loss.
> In other words, it places a maximum on the amount available to pay
> that type of loss, rather than providing additional coverage for that
> type of loss.[8]

IRMI Glossary of Insurance and Risk Management Terms, https://www.irmi.com/term/insurance-

definitions/sublimit (last visited Aug. 26, 2019).   In this interpretation, the term "sub-" is used in

a way that is synonymous with "under," "below," or "beneath," the first three of the meanings in

Polynesian's preferred dictionary definition.   In addition, it is in alignment with the way "sublimit

of liability" has been used in case law – as a limit on a subcategory of liability.   *See, e.g., City of

Atlanta v. Allianz Global Risks US Ins. Co.*, 2014 WL 12061535, at *2 (N.D. Ga. 2014) (analyzing

policy with "a general limit of liability in the amount of $300,000,000 and a sublimit of liability in

the amount of $100,000,000 for damage caused by flood," and noting that the policy "contains

another sublimit of liability in the amount of $10,000,000 for damage caused by flooding that

occurs to property located in areas designated as 'High Hazard Zones for Floods'").   It should be

noted that neither the *Allianz Global* court nor the handful of other courts in this Circuit that have

utilized the term "sublimit of liability" in this fashion in an opinion felt it necessary to separately

define it.   This reinforces the notion that the IRMI's definition is the plain and ordinary meaning

of the term.

     Accordingly, the Court concludes that, as a matter of law, that the Northfield Policy's

$25,000 in coverage for bodily injury caused by an assault or battery offense is a "sublimit of

---

[8]  It is undisputed that Polynesian did not pay an additional premium for the Limited
Assault or Battery Liability Coverage.

liability" as that term is used in the Starstone Policy.   As the parties do not dispute that Polynesian's damages resulting from the attack on Bickford fall within this coverage, the Starstone Policy does not provide coverage here.

### IV.      Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 80) filed by Defendant Polynesian Inn, LLC is **DENIED**; and it is further

**ORDERED** that the Motion for Summary Judgment (Doc. 81) filed by the Plaintiff, Starstone National Insurance Company, is **GRANTED**.   The Clerk is directed to enter judgment in favor of Starstone National Insurance Company and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 26, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE